THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF THE UNITED STATES, *vs.* THE MERCHANTS BANK OF BALTIMORE.—*December* 1848.

A suit was commenced, by an attachment, issued on the 11th of September 1841. The plaintiff filed a declaration in *assumpsit* on the 29th of April 1842, to which the defendants, on the same day, pleaded *non assumpsit*, and on the 10th of June 1842, under leave to amend, they pleaded, that the plaintiff ought not further to maintain its action, because the plaintiff, on the 23rd of April 1842, had recovered a judgment against the defendants in the district court for the city and county of *Philadelphia*, in the State of *Pennsylvania*, for the same cause of action, in a suit commenced in said court since the issuing of the original writ in this case, which judgment remains unreversed, and in full force and effect. HELD:

That this defence was directed against the right of the plaintiff to recover in the form of action adopted by it, and could not be pleaded in abatement, *puis darrein continuance*, but was properly interposed as a special plea, in bar to the further maintenance of the action.

It is not the priority in the commencement of one action that renders the judgment obtained therein, a bar to the recovery of a second judgment in another, but because the first judgment when given, whether in the action commenced first or last, extinguishes the original cause of action, and gives to the plaintiff in lieu thereof one of a higher nature.

The pendency of another suit must be pleaded in abatement, but the plea of a judgment recovered, is not matter in abatement. It does not go to the form of the remedy, but to the right of the plaintiff.

The pendency of a prior suit for the same cause of action will abate a subsequent suit, but the converse of this is not true; the first suit will not be abated by the plea of another suit afterwards commenced, for the same cause of action.

If the matter presented by this plea had been, the pendency of a suit in another State for the same cause of action, it should have been pleaded in abatement, and verified by affidavit or supported by an exhibition of the record, and the proper place for such a plea would have been in the *Pennsylvania* suit.

Where matter of defence arises after the commencement of a suit, it cannot be pleaded in bar of the action generally; it must, if it arises before plea or continuance, be pleaded as to the further maintenance of the suit, if after issue joined, *puis darrein continuance*.

The right to assail a judgment, on the ground that the court pronouncing it had no jurisdiction of the subject or the parties, is undoubted, with respect both to domestic and foreign judgments.

But it is an acknowledged and fixed principle of universal obligation, resulting from the comity, and respect due from one judicial tribunal to another, that a judgment of a court of record of a sister State, is in itself *prima*

*facie* evidence of jurisdiction; and it is not necessary for the party pleading such judgment, to set out affirmatively in his plea, the jurisdiction and facts upon which the power and authority of the court pronouncing the judgment depend.

At common law, the original cause of action is extinguished or merged by a judgment, which is conclusive evidence of indebtment between the parties, and final, unless reversed, with respect to the subject matter adjudicated; and in the absence of proof of any statutory modification of this principle, it must be assumed, that such is the legal effect of the judgments of their courts in the State of *Pennsylvania.*

The principles deducible from the authorities in regard to the construction of the 1st sec. of the 4th article of the Constitution of the *United States,* and the act of Congress of 1790, are:

1st. That if the judgment of the district court for the city and county of *Philadelphia,* pleaded in this case, would be regarded by the courts of *Pennsylvania,* as conclusive evidence of the existence of a debt due by the appellants to the appellee, it is so to be considered by the courts of this State.

2nd. That the original cause of action was extinguished by the judgment of that court; and

3rd. That an action of *assumpsit* cannot be maintained on the original demand.

The cases of *Brengle vs. McClellan,* 7 *G. & J.,* 434; *McElmore vs. Cohen,* 13 *Pet.,* 330; and *Cameron vs. Wurtz,* 4 *McCord,* 278, deciding, that the act of Congress of 1790, does not invest judgments of the States of the Union with a general extra-territorial operation, are not in conflict with the doctrines of this case.

The 5th sec. of the act of 1832, ch. 280, authorising a corporate body to appear to an attachment and contest the claim of the plaintiff, by "pleading or otherwise," clearly gave the right to the appellants to file the plea interposed by them in this case.

A plea which would be regarded as an answer to an action of *assumpsit,* if unaccompanied by an attachment, must be treated as valid, notwithstanding the controversy originated in a proceeding of that kind.

APPEAL from *Baltimore* county court.

This was an *attachment* issued by the appellee against the appellants, on the 11th of September 1841, and laid upon certain real estate of the defendant, lying in the city of *Baltimore.* The facts and pleadings in the case are fully stated, both in the opinion of this court, and of the court below, delivered at January term 1848, by his honor, JUDGE LE GRAND.

This proceeding, commenced by an attachment, which was issued at the instance of the plaintiff, on the 11th september 1841, to recover the sum of $151,342,72. On the 24th Sep-

tember the attachment was laid on certain real estate. At the following January term, being the first appearance term, there being no appearance, there was a judgment nisi. On the 25th January, under the 5th section of the act of the Assembly of 1832, ch. 280, the defendants appeared by their counsel; and on the 29th of April 1842, plaintiff filed its declaration, to which defendants on the same day filed their plea of *non assumpsit*. Afterwards, on the 10th June, defendants, under leave of the court, filed an amended plea, in which it is alleged the plaintiff ought not to maintain its action, inasmuch as the plaintiff, after the day of the issuing forth of the writ in this cause, that is to say, on the 31st day of March 1836, in a certain court of record, called the district court for the city and county of *Philadelphia*, in the State of *Pennsylvania*, impleaded the said defendant in a plea of trespass on the case, &c., for not performing the same identical promises and undertakings, and each and every of them in the declaration mentioned, and that such proceedings were thereupon had in said court in that plea; that afterwards, to wit, on the 23rd day of April 1842, the plaintiff, by the consideration and judgment of the said court, recovered on the said plea against the said defendants, $159,676.20, for its damages which it had sustained on occasion of the not performing the same identical promises and undertakings in the said declaration mentioned. That the said judgment still remains in full force and effect, not in the least reversed, satisfied, or made void. Wherefore the defendants pray judgment, if the plaintiff ought to maintain its aforesaid action. To this plea there was a general demurrer filed on the 20th June 1842; and it is the questions arising under this demurrer, which the court is now called upon to determine, and they are, as presented by counsel:

1. What is the effect, within this State, of a judgment rendered in a sister State?

2. What is the nature of the appearance of the defendants under the act of 1832, ch. 280?

3. What is the nature of the plea of defendants?

The first of these questions arises out of the first section of the 4th article of the Constitution of the *United States*, which

provides, that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State.  And the Congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, *and the effect thereof.*"

In execution of this constitutional authority, Congress, on the 26th May 1790, provided, by enactment, the mode of authentication, and that "the records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given them, in every court within the United States, as they have, by law or usage, in the courts of the State from whence the said records are or shall be taken."

With perfect safety it may be observed, that there is no clause in the federal constitution, the true scope and meaning of which has given rise to greater diversity of opinion, than has this one.  It has passed under judicial review in almost every State in the Union, and it was found impossible to reconcile the various opinions held by learned jurists in regard to it.  In the year 1813, it was considered by the Supreme Court of the *United States,* in the celebrated case of *Mills vs. Duryee,* reported in *7th Cranch,* 481.  In that case it was held, whatever effect the record would have in the State from whence it is taken, it must have the same faith, credit and effect in every other court, so that if it have the faith, credit and effect of evidence of the highest nature in the court from whence it is taken, it must have precisely the same faith, credit and effect in every other court in the Union.

With every disposition on the part of the several courts of the Union to comply with the doctrine laid down in that case, still, judging from the contrariety in the decisions of the several courts, and the subsequent decisions of the Supreme Court of the *United States,* the doctrine, in many instances, has been wholly misconstrued.  In some cases it was held to have established the principle, that the judgment of a State court carries with it, into every State, all its original attributes, energies and incidents, clothed with the authority of the laws under which it was pronounced, and that *in relation to judicial proceedings, in no particular* are the States to be consid-

ered as foreign to each other, and therefore no plea, other than that of *nul tiel record* would be allowed to an action on a judgment rendered in a sister State. And in support of this view, the case of *Hampton vs. McConnell*, 3 *Wheaton*, 234, has also been relied upon. In this case, the court re-asserted the doctrine to be, " that the judgment of a State court should have the same credit, validity and effect in every other court in the *United States* which it had in the State where it was pronounced, and that whatever pleas would be good to a suit thereon in such State, and none others, could be pleaded in any other court in the *United States*."

This decision was made in the year of 1818. In the year of 1839, the question was again brought under review of the Supreme court, in the case of *McElmoyle vs. Cohen*, 13 *Pets.*, 312, in which it was held, that although a judgment in the court of a State, is not to be regarded in the courts of her sister States as a foreign judgment, or as merely *prima facie* evidence of a debt to sustain an action of debt upon the judgment, it is to be considered only distinguishable from a foreign judgment in this; that by the first section of the fourth article of the Constitution, and by the act of May 26th, 1790, sect. 1, the judgment is *conclusive on the merits*, to which full faith and credit shall be given, when authenticated as the act of Congress has prescribed. It was also held, that there is no constitutional inhibition on the States, nor any clause in the Constitution from which it can be even plausibly inferred, that the States may not legislate upon the remedy on suits on the judgments of other States, exclusive of all interference with their merits; and, in accordance with these views, the court decided the plea of limitations, in an action instituted in one State on a judgment obtained in another State, to be a plea to the remedy, and consequently the *lex fori* must prevail in such a suit.

The late *Justice Story*, in his admirable *Commentaries on the Conflict of Laws*, sec. 609, deduces from all these decisions, this doctrine: "By the Constitution of the *United States*," says he, "it is declared, that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. And Congress, in pursuance of the power

given them by the Constitution, in a succeeding clause, have declared that the judgments of State courts shall have the same faith and credit in other States, as they have in the State where they are rendered. They are, therefore, put upon the same footing as domestic judgments. But this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was rendered, to pronounce the judgment, nor an inquiry into the right of the State to exercise authority over the parties or the subject matter, nor an inquiry, whether the judgment is founded in, and impeachable for, a manifest fraud. The Constitution did not mean to confer any new power upon the States, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. *It did not make the judgments of other States, domestic judgments to all intents and purposes;* but only to give a general validity, faith and credit to them, as evidence. No execution can issue upon such judgments, without a new suit in the tribunals of other States. And they enjoy not the right of priority, or privilege, or lien, which they have in the State where they are pronounced, but that only which the *lex fori* gives them by its own laws, *in their character of foreign judgments.*"

The view of *Justice Story* is sustained by the case of *Cameron vs. The Adm'r of Wurtz*, 4 *McCord's Rep.*, 278, a case recognised with approbation by the Supreme Court of the *United States*, in the case of *McElmoyle vs. Cohen*, and also by our own Court of Appeals, in the case of *Brengle vs McClellan*, 7 *Gill and Johns.*, 434.

The doctrine obligatory on us, on this subject, is undoubtedly contained in the authorities to which I have referred, and, if I rightly comprehend it, it is this:—By the first section of the fourth article of the Constitution of the *United States*, and the act of Congress of the 26th May 1790, it was intended, that the judgments of a State court should have to a certain extent, the character and validity of a *domestic* judgment, in every other State court in the Union. That is to say, they should have the same faith, credit and validity, as in the State where they were rendered, *so far as their existence and their conclusiveness on the merits of the original cause of action is*

*concerned*, and, therefore, not to be impeached, except on the ground of a want of jurisdiction, or of fraud. But, beyond this, they are to be considered as foreign judgments, and to be dealt with accordingly.

If this be the true doctrine, then there can be no difficulty in understanding several of the decisions cited in argument. The case in 13 *Peters*, 312, the one in *4th McCord*, 278, and the case of *Brengle vs. McClellan,* *7th Gill & John.*, 434. All these cases, in my apprehension, are decided on the ground, that the constitutional provision and the act of Congress, only render the judgments of sister States *domestic* judgments, so far as their existence as judgments of the State rendering them, and their conclusiveness on the merits, are concerned.

And this being so, it necessarily follows, that in the distribution of assets, the *lex fori* must govern, for it prescribes the *remedy*, and as there is no constitutional inhibition on the States in regard to the *remedy*, and no *legislation* in this State in regard to it, the *lex fori* is ascertainable only from the principles of the common law. That is to say, in the absence of any legislative enactment on the subject, (except for the purposes already indicated,) the rank and character in this State, of a judgment rendered in a sister State, is that affixed to *foreign* judgments by the common law. It is confidently believed, that these views are fully sustained by the latest decision of the Supreme Court of the *United States*, on the subject. In that case, *( McElmoyle vs. Cohen,* 13 *Peters,* 312,*)* it was held, that although by the act of Congress of 1790, judgments rendered in a sister State are made debts of record, yet they do "not carry with them into another State, the efficiency of a judgment upon property or persons, to be enforced by execution," "and that to give them the force of judgments in another State, *they must be made judgments there,*" and that judgments out of the State in which they are rendered, *are only evidence in a sister State, that the subject matter of the suit has become a record, which cannot be avoided but by the plea of nul tiel record.* It was moreover held, that such judgments have *not* the force of domestic judgments, beyond the jurisdiction declaring them to be judgments, but are only

domestic judgments *as to the merits of the claim, or subject matter of the suit.* It was also decided, that such judgments, in States other than the one where they were rendered, do not take precedence of simple contract debts, unless they have assigned to them such precedence by the *local law* of such other States.

It is supposed, and it has been very ably argued to that effect by the counsel for the defendant, that the Supreme court, in deciding such judgments to have no precedence of simple contract debts, rested their decision in this regard, wholly on the supposed intention of the legislature of *Georgia*, as expressed in its enactment. To my mind it is clear, the court meant to assert the principle *independently*, of all legislation of the State, and to rest it for support on the principles of the common law. The doctrine and reasoning of the case of *Cameron vs. Adm'r of Wurtz*, 4 *McCord*, 278, are both adopted, and the court observe, in speaking of that decision, that it was "*correctly placed upon the footing, that the first section of the fourth article of the Constitution has effected no change in the nature of a judgment;*" and if possible to prevent misapprehension, the court go on to observe, that if this case had not been before them, and the point had been then presented as an original question, they would have come to the same conclusion. And this seems to be the view taken by our Court of Appeals, in the case of *Brengle vs. McClellan,* 7 *Gill & Johns.,* 443, where it is said, a judgment obtained in another State, "can rank only as a simple contract claim in the distribution of assets; the conclusive effect given to it by the Constitution and act of Congress, as a judgment not operating to place it upon an equal footing with a judgment obtained in *Maryland,* in the distribution of assets, but leaving it in this respect to the operation of common law principles, according to which it would be considered a foreign judgment, and be paid as a simple contract debt."

Now if it be true that neither the constitution nor the act of the 26th of May 1790, effected any change in the *nature* of the judgment, then it follows as a necessary consequence, that its character is precisely the same as though the Constitution

had been silent on the subject. And this being so, the question is, in what light are *foreign* judgments viewed? There can be no doubt on this subject. They have always been considered in the light of simple contracts, and being so regarded, they cannot be held to merge the original cause of action, for it is of *equal* dignity. Indeed, the whole doctrine of merger proceeds on the idea, that the simple contract has been merged in one of a *higher* dignity and grade. To use the language of *Chief Justice Tindall, in Smith vs. Nicholls,* 35 *Eng. C. L.,* 94, "the ground on which a plea of judgment recovered, bars the plaintiff from any further action, is, that the *original nature* of the debt, or damage, where it may be sought to be recovered, is changed; that he has a higher remedy: he has a judgment in a court of record on which he can issue an execution."

Now let us test this case by these principles, for the purpose of ascertaining whether there is any merger because of the judgment rendered in *Philadelphia.* *Ch. Justice Tindall* tells us that this takes place because "the *original nature* of the debt, or damage, *where it may be sought to be recovered,* is changed;" and the Supreme Court of the *United States* have decided, that the Constitution *"has effected no change in the nature of the judgment,"* adopting the language of 4 *Mc-Cord,* 278, which is, that beyond the limits of the State where it is rendered, it is regarded but as a *simple contract.* From this it is clear, there is no change in the nature of the original cause of action, and therefore there can be no merger. Again *Chief Justice Tindall* tells us, that merger takes place, because the party "has a higher remedy, he has a judgment in a court of record on which he can issue an execution."

The Supreme Court of the *United States,* both in the case of *Mills vs. Duryee,* 7 *Cranch,* and the case of *McElmoyle vs. Cohen,* tell us, that a judgment rendered in a sister State, is *not* such a judgment as one on which an execution may issue in a different State.

From this examination of the nature of a judgment rendered in a sister State, and what is necessary to work a merger, it must be apparent, that the judgment in *Philadelphia* does not

work an extinguishment or merger of the original cause of action, which is the ground work of this case.    And this view is *fully* and most *distinctly* taken in numerous cases.

In the case of *Smith vs. Nicholls*, 35 *Eng. C. L.*, 94, it is expressly decided, that a foreign judgment, (and I have shewn this to . be such, in the attitude in which it is presented to us,) is nothing more than an agreement between the parties, to the extent of the debt or damage; and *Judge Parsons,* in the case of *Bissell vs. Briggs*, 9 *Mass. R.*, 462, (a case recognized with the highest approbation by the Supreme Court of the State of *New York*, in 5 *Wendall*, 155,) says that such judgments, *i. e.*, judgments of sister States, may be declared on "as evidence of debt or promises," thus showing that the original *nature* of the cause of action is not merged in the judgment.

But it is said, admitting this to be so, still the plea is good and the judgment a conclusive bar to this action, because it is used *defensively*.

It is undoubtedly true, that a distinction has been taken between suits brought to *enforce* a foreign judgment, and a suit brought against a party, who sets up such judgment as a defence to the suit.    In the former, it is held, that no sovereign is bound to enforce a foreign judgment; but it is otherwise, where the defendant sets up a foreign judgment as a bar to proceedings.    *Story's Conflict of Laws, sec.* 598.

But does this case come within this rule?    Is not what is meant by setting up a foreign judgment as a bar to the suit, the pleading of such foreign judgment as shows that the right has been decided to be with the defendant, or such an one as shows that he is exonerated from *all* liability?    In such a case the matter is *res judicata*, and ought to be received as conclusive evidence of right.    But this is not such a case; here, the judgment plead does not establish the right to be with the defendants, but with the plaintiff, it being nothing more, to use the language of *Chief Justice Tindall*, than an ascertainment of the *amount* of the debt, and as it does not *merge* that, by giving a *higher remedy*, it can be no bar to the action.    This is precisely the doctrine asserted in *Smith vs. Nicholls and in Hall vs. Odber*, 11 *East.*, 118.

Entertaining these views, it is not necessary I should consider at length the other questions raised in the case. I shall therefore merely remark, that the construction which I place on the 5th sec. of the act of Assembly of 1832, chapter 280, is, that the appearance authorized by it is, that the defendant appears both to the *capias* and the attachment, the attachment not, however, being dissolved by the appearance, but remaining as a *security;* that it is impossible to obtain a judgment, *after* appearance in the attachment, without also obtaining a judgment in the other action, the one which commences with the *capias*.

As regards the matter pleaded, I think, independently of the principles of pleading, our Court of Appeals have decided it should have been pleaded *puis darrein continuance,* if it be a defence at all. 2 *Harris and Gill,* 491, and 12 *Gill & Johns.*, 361. Moreover, I think it should have been pleaded in abatement, inasmuch as it does not show an absence of *all* cause of action, but goes upon the idea that the original cause of action is merged in the judgment, and that the remedy is on the judgment, and not on the original cause of action; and further, had the commencement and conclusion of the plea been those of a plea in abatement, instead of those of a plea in bar, as they are, it would have been bad on general demurrer, because it is not verified by affidavit, as is required by the 4*th* and 5*th Anne, chap.* 16. Such a plea may be treated as a nullity. 1 *John. Cases,* 397. 16 *John. R.,* 307. 2 *Dallas,* 184.

*Had* the judgment merged the original cause of action, and had it been pleaded in abatement, it could have been verified by the affidavit of counsel. *Lumly vs. Foster, Barnes,* 334. 1 *Bacon's Abridgment, Abatement,* "*O.,*" 33. *Same Rep.,* 348, or it might have been exemplified by a record under the seal of the court, and authenticated under the act of Congress. 4 *Halstead,* 83.

Entertaining these views, judgment will be entered on the demurrer for plaintiff."

And thereupon, judgment on demurrer for the plaintiff was entered on the 26th of February 1846, for $300,000, damages and costs, to be released on payment of $196,481.54, with

interest from the 26th February 1846, and costs. From this judgment the defendants appealed to this court.

The cause was argued before DORSEY, C. J.; SPENCE, MAGRUDER, MARTIN and FRICK, J.

By MEREDITH for the appellants, and
By McMAHON and BROWN for the appellee.

MARTIN, J., delivered the opinion of this court.

In this case an attachment on warrant was issued out of *Baltimore* county court, at the instance of the appellee, against the appellants on the 11th of September 1841, to recover the sum of $151,342.72; alleged to be due, upon an account stated, for money lent and advanced, and for money had and received.

The attachment was laid on certain real estate, in the city of *Baltimore*. And it appears from the record, that although the attachment was not dissolved by the execution of an approved bond, as required by the provisions of the act of Assembly, of 1832, ch. 280, yet the defendants, in pursuance of the privilege secured to them, by the fifth section of that act, appeared to the *capias* on the 26th of January 1842, for the purpose of contesting the plaintiff's claim.

On the 29th of April 1842, a declaration, *in assumpsit*, was filed by the plaintiff, to which, on the same day, the defendants filed their plea of *non-assumpsit*.

At the May term, leave was granted by the court to amend this plea, and on the 10th of June 1842, the defendants filed a special plea in bar, against the further maintenance of the action, in which they aver:

" That the plaintiff ought not to maintain its action, inasmuch as the plaintiff, after the day of issuing forth the writ in this cause, that is to say, on the 31st day of March 1842, in a certain court of record, called the district court for the city and county of *Philadelphia*, in the State of *Pennsylvania*, impleaded the said defendants, in a plea of trespass on the case, for the not performing the same identical promises and undertakings, and each and every of them, in the declaration men-

tioned. That afterwards, to wit, on the 23rd day of April, 1842, the plaintiff, by the consideration and judgment of the said court, recovered on the said plea, against the said defendants, $159,676.20, for its damages, which it had sustained on the occasion of the not performing the same identical promises and undertakings, in the declaration mentioned. And that the said judgment still remains in full force and effect, and not the least reversed, satisfied, or made void.''

To this plea, a general demurrer was filed, on the 20th of June 1842. The demurrer was sustained by the county court, and the sole question presented for our consideration upon this appeal, is, that which relates to the validity of the plea, under the circumstances of the case, as exhibited by the record.

In the case of *Duffy and Mehaffy, vs. Lytle,* 5 *Watts,* 120, an action was brought upon a bond, in the district court of *Lancaster* county, in *Pennsylvania.* The defendant pleaded in bar, a former recovery for the same cause of action, obtained in a suit instituted subsequent to the action then in controversy. The plea was sustained, and we quote the opinion of the court, as containing a very full, clear, and correct exposition of the rule of pleading directly applicable to the question now under consideration. They say:

'' The circumstance of this action, being brought upon the bond, previously to the one in which the judgment was entered, that has been pleaded in bar to the further maintenance in this, does not seem to furnish a sufficient reason, why the plea should not be held good: because, although the priority of an action may be a very good reason, why a judgment for the same cause shall not abate it, and why the first, when pleaded properly, should abate the second, as the plaintiff ought not to be permitted to vex and harass the defendant against his will, with two actions for the same cause; yet it is obvious that it is not the priority in the commencement of the one action, that renders the judgment obtained therein, a bar to the plaintiff's obtaining a second judgment in the other; but because the first judgment, when given, whether it be in the action commenced first or last, extinguishes the original cause of action, and gives to the plaintiff, in lieu thereof, one of a higher order. Instead

then, of the debt, as was the case here, being founded upon a bond, it became immediately upon the rendition of the judgment, though in the last action commenced, a debt of record, that could no longer be controverted. And, hence, the defendant could not, therefore, be said, to stand indebted to the plaintiffs by a bond or speciality, but by a judgment that had become a matter of record, which could not be questioned or denied.''

The distinction between the plea of a pending suit, and the plea of a former recovery, was also considered in the case of *Nicholl vs. Mason*, 21 *Wend.*, 341, by the Supreme Court of *New York.* The court said;

''The pendency of another suit for the same cause of action, must be pleaded in *abatement* of a suit *subsequently* commenced; but the converse of the proposition does not hold true. The *original* or *first* suit cannot be abated, by a plea that another action for the same cause was *afterwards* commenced. But this doctrine does not overturn the plea. The defendant does not set up matter in abatement, but in bar of the action. He does not plead the pendency of another suit, but a *judgment* rendered. The plea does not go to the *form* of the remedy, but to the right of the plaintiff. It shows that the cause of action, which the plaintiff once had, is gone forever.''

In the case of *Le Bret vs. Papillon*, 4 *East*, 502, it was held:

''That when matter of defence has arisen after the commencement of the action, it could not be pleaded in bar of the action generally, but must, when it has arisen before plea or continuance, be pleaded as to the further maintenance of the suit; and when it has arisen after plea, and before replication, or after issue joined, then *puis darrien continuance.*''

And in *Semmes vs. Naylor*, 12 *Gill & Johns.*, 361, the Court of Appeals declared the rule to be:

''That where the matter of defence has arisen after the commencement of a suit, it cannot be pleaded in bar of the action generally; it must, when it has arisen before plea or continuance, be pleaded as to the further maintenance of the suit, and when it has arisen after issue joined, *puis darrien continuance.*''

It is manifest, we think, on the principles enunciated in cases to which we have referred, that the several objections urged against the integrity of this plea; as that, it could not have been interposed, after the jurisdiction of the county court had attached by the issuing of the attachment; that the plea was in its nature, a dilatory plea, and should have been pleaded in abatement, *puis darrien continuance,* and verified by affidavit, or sustained by a production of the record, must all be overruled.

The plea has all the elements of a special plea in bar, and as its matter was not *in esse,* at the time the plea was interposed, and when there was filed to it a demurrer, and joinder in demurrer, it could not have been pleaded, *puis darrien continuance.* It was properly pleaded as a special plea in bar, against the further maintenance of the action. If the matter presented by the plea had been the pendency of a suit in another State, for the same cause of action, as in the *Trenton Bank vs. Wallace,* 4 *Halstead,* 82, it should have been pleaded in abatement, verified by the affidavit of the party, or supported by an exhibition of the record; and the proper place for such a plea, would have been in the *Pennsylvania* suit. But as we have already said, the plea before us is directed against the right to recover in the form of action adopted by the appellee, and has none of the characteristics, of a plea in abatement. And the defence relied upon by the appellant, was therefore properly introduced as a plea in bar, to the further maintenance of the action.

In the argument of this cause the counsel for the appellee contended, that the plea was to be treated as imperfect, on the ground, that there was on its face no avermement, that the court pronouncing the judgment in question had jurisdiction of the cause, and of the parties. This objection cannot be sustained.

It is certainly true, that unless the court rendering the judgment, had jurisdiction, both of the cause and of the parties, it would be treated as a nullity. It would be considered as merely void, and the party against whom it was used, could, by an appropriate plea, assail it, and put it aside, as utterly ineffectual and powerless. The right to attack a judgment, on the ground that the tribunal pronouncing it was not

invested with jurisdiction and authority; that it was inoperative and void, as being *coram non judice,* is undoubted, with respect, both to domestic and foreign judgments.

But in this case, the plea avers, that a judgment in *personam* was rendered by a court of record, styled the district court for the city and county of *Philadelphia,* in the State of *Pennsylvania,* in a suit, instituted by the appellee against the appellants, for the identical causes of action forming the subject of the present suit, and that in the said cause, judgment was rendered in favor of the plaintiff, And we consider it as an acknowledged and fixed principle of universal obligation, resulting from the comity and respect which are due from one judicial tribunal to another, that a judgment emanating from a court thus constituted, is in itself *prima facie* evidence of jurisdiction; and that it is not necessary for the party introducing the judgment to set out affirmatively in his declaration or plea, the jurisdictional facts upon which the power and authority of the court pronouncing the judgment depend.

In the case of *Robertson vs. Struth,* 5 *Adol. and Ellis,* N. S., 942, it was held, that in an action of debt, on a foreign judgment, it was not necessary to state in the declaration, that the court rendering the judgment had jurisdiction over the parties and the cause. *Mr. Justice Patterson* said;

"We presume the judgment of a foreign court is correct; and that if there was any objection to the judgment it should be raised by plea."

In *Bissel vs. Briggs,* 9 *Mass.* 462, *Chief Justice Parsons,* when speaking of the effect of a judgment rendered in *New Hampshire,* said;

" That where the jurisdiction had attached, which, *until disproved, was always to be presumed,* the conclusion of the judgment was absolute for all purposes."

In the case of *Williams vs. Preston,* 3 *J. J. Marshall,* 603, an action of debt was brought on decree pronounced by a court in *Virginia,* against the defendant, *in rem and in personam.* On demurrer to the declaration it was objected, that it was not shown affirmatively, that the defendant was served with notice of the pendency of the suit against him in *Virginia,* or

that he appeared to it, or defended it; and that the decree was void, and could not be the foundation of a suit. The declaration was sustained. The court said:

" That it was not necessary to aver in the declaration, that the *Virginia* court had such jurisdiction, as would authorize it to render any decree, other than one *in rem.* The comity and respect which are justly due from one State to another, would not allow the court to presume, that the tribunal which pronounced the decree in that case transcended its jurisdiction." In the cases of *Wheeler vs. Raymond,* 8 *Cow.,* 311, *and Scott vs. Coleman,* 5 *Little Rep.,* 351, the same proposition is recognized and maintained.

The objections which we have thus far examined, are those which relate to the character and structure of the plea.

The question which remains to be considered, is, whether the cause of action upon which this suit was instituted, is to be treated as extinguished by the *Pennsylvania* judgment, upon the true construction of the first section of the fourth article of the Constitution of the *United States,* and the act of Congress of the 26th of May 1790.

In the consideration of this question, it is to be assumed in the case before us, that this would have been the legal effect of the judgment in the courts of *Pennsylvania.* The cause of action here declared upon, would have been regarded as merged in the judgment, by the judicial tribunals of that State.

This is the rule of the common law, and we are not informed by the record, that there has been in *Pennsylvania* any statutory modification of the principles of that law, with respect to the doctrine of merger.

It is an acknowledged and familiar principle of the common law, that the original cause of action is considered as extinguished or merged by a judgment, when the judgment is held to be not merely *prima facie,* but conclusive evidence of the indebtment between the parties, and final, unless reversed, with respect to the subject matter adjudicated. And although there certainly has existed some diversity and fluctuation of judicial opinion, with respect to the true import of the clause in the Constitution, and the act of Congress, to which we have

referred, yet we think, that according to the interpretation which has been authoritatively placed upon them, by the Supreme Court, the judgment set forth in the plea, must be regarded as possessing the same operation and effect to which it would be entitled in the State of *Pennsylvania.* That is, that the judgment is to be here estimated in the scale of evidence, as creating a debt of record, conclusive with reference to the subject matter involved in the controversy in which it was rendered; not liable to be controverted or impeached, unless upon the grounds, that it was procured through the instrumentality of fraud, or that the court pronouncing it, was not clothed with competent jurisdiction; and necessarily producing an extinguishment of the original demand, and disabling the plaintiff from instituting upon that claim, an action of *indebitatus assumpsit.*

This question was considered, for the first time, by the Supreme Court, in the case of *Mills vs. Duryee,* decided at the February term, 1813, 7 *Cran.*, 481.

It was an action of debt in the circuit court for the *District of Columbia,* upon a judgment of the Supreme Court of *New York,* to which the defendant pleaded *nil debet.*

The plea was adjudged bad. *Mr. Justice Story,* in delivering the opinion of the court, after quoting the clause of the Constitution in question, and the act of Congress, of the 26th of May 1790, said:

"It is argued, that this act provides only for the admission of such records as evidence, but does not declare *the effect* of such evidence when admitted. This argument cannot be supported. The act declares that the record, duly authenticated, shall have such faith and credit as it has in the State from whence it was taken. If, in such court, it has the faith and credit of evidence of the highest nature, viz., *record evidence*, it must have the same faith and credit in every other court. Congress have therefore declared the *effect* of the record, by declaring what faith and credit shall be given to it. It remains only then to inquire in every case, what is the effect of the judgment in the State where it was rendered."

In the case of *Hampton vs. McConnel,* decided in 1818, 3 *Wheat.*, 234, we have again the opinion of the Supreme Court,

delivered by *Mr. Chief Justice Marshall*, in a case similar in its character, to *Mills vs. Duryee*.

It was an action of debt on a judgment of the Supreme Court of *New York*, to which *nil debet*, was pleaded.

The chief justice said;

"The court cannot distinguish the two cases. The doctrine held in *Mills vs. Duryee*, was that the judgment of a State court, should have the same credit, validity and effect in every other court in the *United States*, which it had in the place where it was pronounced, and whatever pleas would be good to a suit thereon in such State, and none other, could be pleaded in any court of the *United States*."

In the case of *McElmoyle vs. Cohen*, 13 *Peters.*, 324, the Supreme Court upon examining the import of the Constitution, and the act of Congress to which we have referred,—Say:

"Though a judgment obtained in a State court is not regarded in the courts of her sister States, as a foreign judgment, or a merely *prima facie* evidence of a debt to sustain an action upon the judgment, it is to be considered as distinguishable from a foreign judgment in this, that by the first section of the fourth article of the Constitution, and by the act of May 26th, 1790, the judgment is a record *conclusive upon the merits*, to which full faith and credit shall be given, when authenticated as the act of Congress has prescribed." ✳ ✳ ✳ ✳ ✳ ✳ "By the law of the 26th of May 1790, the judgment is made a *debt of record*, not examinable upon its merits; but it does not carry into another State, the efficacy of a judgment upon property or persons, to be enforced by execution."

Again, the court after quoting the act of Congress, ask what faith and credit is given in the States, to the judgment of their courts?

"They are record evidence of a debt, or judgments of record, to be contested only in such way as judgments of record may be; and consequently are conclusive upon the defendant in every State, except for such causes as would be sufficient to set aside the judgment in the courts of the State in which it was rendered. In other words, if a judgment is conclusive in the

State where it is pronounced, it is equally conclusive every where in the States of the Union.''

This point was directly decided by *Mr. Justice Washington,* a very eminent constitutional jurist, in the *United States* circuit court, for the third circuit, in the case of *Green vs. Sarmiento,* 3 *Wash., C. C. Rep.,* 17.

The question arose on a plea of bankruptcy, to an action of debt on a judgment of the Mayor's court of *New York.*

The contract was made in the island of *Madeira.* The defendant was discharged by the bankrupt law of *Teneriffe,* in 1801. But in 1797, a judgment had been recovered in *New York* against the defendant, in an action of *assumpsit* upon this contract.

The validity of the plea rested on the question, whether *Teneriffe* was to be considered as the place of the contract, notwithstanding the judgment; or, whether the contract, though made at *Teneriffe,* was not to be regarded by the court as merged by the judgment; and *New York,* the place of the judgment, to be treated as the place of the contract.

The solution of this question depended on the true interpretation of the Constitution of the *United States,* and the act of Congress of the 26th of May 1790.

The subject was examined with elaborate care, and great ability, by the judge who delivered the opinion. And the resolution of the court was, that the *New York* judgment was conclusive, and amounted to a complete extinguishment of the original contract, and that the certificate and discharge of the defendant at *Teneriffe,* afforded no bar to the plaintiff's demand.

In the case of *Andrews vs. Montgomery,* 19 *Johns. Rep.,* 162, an action of *assumpsit* was brought upon a judgment recovered against the defendants, in the court of common pleas of the county of *Essex,* in the State of *New York.*

The point in controversy was presented to the court upon a case stated. And it was ruled by *Mr. Chief Justice Spencer,* that the judgment was conclusive evidence of the debt claimed, and that an action of *assumpsit* could not be maintained upon it.

In delivering the opinion of the court, the chief justice, after animadverting upon the case of *Hitchcock vs. Aicken*, 1 *Caine's Rep.*, 461, and quoting, with approbation, the case of *Mills vs. Duryee*, said :

"We are bound to consider the judgment set forth in the declaration, as a debt of record due from the defendants to the plaintiff."   ✻ ✻ ✻ ✻

"The plaintiff has counted upon the judgment in *New York* as a simple contract, and, accordingly, it is set forth as a promise to pay the amount adjudicated. Now it is well settled, that *assumpsit* cannot be supported where there has been an express contract, under seal or of record."   ✻ ✻ ✻ ✻

"The judgment recovered, (19 *John.*, 165,) in *New Jersey*, being admitted by the pleadings, and standing totally unimpeached, we are bound to consider it as fairly and justly obtained, and as establishing a debt of record against the defendant. It is not therefore merely *prima facie* evidence of a debt, like a foreign judgment, but absolute and decisive of a debt. *Assumpsit* then will not lie upon it."

We have quoted largely from the prominent cases bearing upon this point, because the proposition submitted for our consideration, involves a question purely of constitutional law, depending upon authority. And we understand the principles deducible from the authorities, are :

1. That if the judgment in controversy would be regarded by the courts of *Pennsylvania* as conclusive evidence of the existence of a debt due by the appellants to the appellee, it is so to be considered in the courts of this State.

2. The result of this doctrine necessarily is, that the original cause of action was extinguished by the judgment, rendered in the district court for the city and county of *Philadelphia*, in favor of the appellee against the appellants.

3. And as a corollary from these propositions, that an action of *assumpsit* could not be maintained upon the original demand.

The case of *Brengle vs. McClellan*, 7 *Gill & John.*, 434, is not to be considered as in conflict with this doctrine.

It was there held by the Court of Appeals, that a judgment of the State of *Pennsylvania*, conclusive between the parties

in that State, and having priority over bonds, single bills, and simple contract debts in that State, as against the assets of the defendant in the hands of his executor, is considered only as a simple contract debt in the distribution of assets in this State, within the meaning of the act of Assembly of 1798, ch. 101, sub-ch. 8, sec. 17.

A proposition similar in character, was established in *McElmoyle vs. Cohen,* 13 *Pet.,* 330, and in *Cameron vs. Wurtz,* 4 *McCord's Rep.,* 278.

The correctness of these adjudications cannot be questioned. But it is perfectly manifest from the course of argument pursued in these opinions, that the doctrine enunciated was placed upon the ground, that the act of Congress of 26th May 1790, was not to be construed as investing the judgments of the States of the Union, with a general extra-territorial operation. The opinion in the case of *Brengle vs. McClellan,* is long. And we can only, in illustration of the statement, that this was the controlling view in the judgment of the Court of Appeals, refer to their language, at page 440.   They say :

"The doctrine has never been carried further, than to give to the judgment of another State the same conclusive effect, and obligatory force, in every State in the Union, that it had in the State where it was rendered.   To extend the principle further, and to give to it all the latitude contended for in this case, would give to the jurisdiction of our sister States, an extra-territorial operation, and put it in their power to make laws for us, not only without our consent, but contrary to our interior policy, and municipal legislation."

This unquestionably is the correct interpretation of the act of Congress.   Whether under the grant of power contained in the first section of the fourth article of the Constitution of the *United States,* the right resides in Congress to give to the judgments of the sister States, for all purposes, extra-territorial force, is not the question.   This power has never been exerted by the national legislature.

And it is now settled, to use the words of the Supreme Court, in *McElmoyle vs. Cohen,* 13 *Pet.,* 325 :

"That although by the act of Congress, the judgment is made a debt of record, not examinable upon its merits; it does not carry with it, into another State, the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another State, it must be made a judgment there; and can only be executed in the latter, as its laws may permit."

And again, at page 326, where it said:

"The judgment is put upon the footing of a domestic judgment; by which is meant, not having the operation and force of a domestic judgment, beyond the jurisdiction declaring it to be a judgment, but a domestic judgment as to the merits of the claim, or subject matter of the suit."

The doctrine of the case of *Brengle vs. McClellan* has not been controverted; but we do not understand it as impairing the position assumed by the counsel for the appellants, that the original cause of action is to be considered as extinguished by the judgment rendered in *Pennsylvania*.

On the contrary, the principles announced by the court in that case fortify this position.

It was there held, that if the judgment was conclusive, upon the merits, in the State where it was pronounced, it would be regarded as equally conclusive in the *Maryland* courts.

And if it be true, that the judgment possessed in the State where it was rendered, the attribute of conclusiveness; that it had there the rank and dignity of a debt of record; that it was not re-examinable, and could not be controverted, with respect to the merits of the original demand; that the parties were precluded from going behind the judgment into an investigation of the original cause of action; and that, by the act of Congress of the 26th of May 1790, the same effect is to be attributed to the judgment, by the courts of *Maryland*, when it is introduced into the tribunals of that State as evidence, or relied upon in pleading, to which it would be entitled in the State where it was pronounced; and that it has all the operation and force in *Maryland* that could be claimed for it in *Pennsylvania*, as conclusive, in relation to the merits of the claim and the subject matter of the suit; it follows as an irresistible conclusion

upon the undoubted principles of the common law, that it must operate here as an extinguishment of the original demand.

We think it therefore to be clear upon the true exposition of the first section of the fourth article of the Constitution of the *United States*, and the act of Congress passed in execution of the power granted by the Constitution, and the doctrine of extinguishment, as established by the common law, that the appellee could not have maintained an action of *assumpsit*, upon the cause of action exhibited in the record, if the judgment set forth in the plea had been obtained in *Pennsylvania*, prior to the commencement of the suit. And we have already said, when considering the question of pleading involved in this case, that although the judgment relied upon as extinguishing the original claim, was obtained after the institution of the suit, the defendants were authorized to plead it specially in bar against the further maintenance of the action.

It has been stated, that the appellants appeared to this action, by virtue of the provisions of the fifth section of the act of Assembly of 1832, ch. 280. The language of the section, is:

" That when by virtue of this act, any attachment shall issue against the lands, &c., of any corporate body, the said corporate body may, in cases where a natural person, if defendant, might, by entering special bail to the action, dissolve such attachment, dissolve the same by entering into bond with security, for paying and satisfying the judgment that may be rendered against said corporate body in the said cause; and said corporate body may appear in the said case of attachment, and by pleading, and otherwise, contest the claim of the plaintiff, although no dissolution, as aforesaid, shall have taken place; the said attachment however, remaining and continuing in full force and effect, and upon the issues or pleading on the part of the corporate body, judgment on the cause of action may be recovered against the said corporate body, as well as judgment of condemnation in the attachment."

And the counsel for the appellee have contended, that it was not the purpose and aim of the special privilege conferred by this statute, to let in a plea like that which has been pleaded by the appellants.

This position, we think, cannot be sustained. The corporation is authorized by the act to appear to the attachment, and contest the claim of the plaintiff, by pleading or otherwise.

The appellants appeared in this suit, and contested the claim of their adversary by interposing a plea, which, as we have seen, is to be characterized as a plea in bar, directed to the foundation of the action; and it would be impossible to deny to the corporation the right of introducing a plea of this character, without interpolating into the statute new terms and provisions.

Under the act of 1832, if a bond is not given by the corporation, the attachment stands as a security for the debt, upon the contingency of the plaintiff obtaining against the defendant a judgment *in personam*. *Barr vs. Perry*, 3 *Gill Rep.*, 313.

After the appearance of the defendant, two suits are placed upon the docket; and the questions in the action of *assumpsit*, are to be determined irrespective of the attachment.

A plea which would be regarded as an answer to an action of *assumpsit*, if unaccompanied by an attachment, must be treated as valid, notwithstanding the controversy originated in a proceeding of that kind. We think, therefore, that the judgment of the county court must be reversed.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.