## PATTEN *v.* STEWART.

CONTRACT. — RESCISSION. — An application for the rescission of a contract is addressed to the sound discretion of the court, but that discretion must be exercised in conformity to established principles. Page 339.

SAME. — FRAUD. — It is a general rule that a contract will not be rescinded, even for fraud, unless the contracting parties can be put in *statu quo,* nor then, unless the application for a rescission be made within a reasonable time. Page 339.

SAME. — DILIGENCE. — A party who seeks the aid of the court to compel the rescission of a contract, for fraud, must show that he has exercised at least reasonable diligence in ascertaining the facts, if readily within his power, and that he has been prompt in seeking his remedy, after the facts constituting the fraud were discovered. The relief is granted to the vigilant, but denied to the negligent. Page 339.

SAME. — ENTIRETY OF CONTRACT. — Where real estate and personal property have been sold together, though a separate price may have been affixed to each, yet if the two sums were aggregated, and the contract was treated by the parties as an entirety, the vendee cannot rescind the contract as to the real estate, without offering also to restore the personal property. Page 340.

SAME. — STATU QUO. — Where a vendee of real estate has entered into and retained possession for a number of years, receiving the rents, changing the condition of the estate, and making lasting improvements, he cannot restore to the vendor what he received from him, and hence he cannot have a rescission of the contract. Page 340.

SAME. — TENDER OF DEED. — Where a vendee of real estate has received a conveyance, and has entered into possession, he must, if he seeks a rescission of the contract, tender to his vendor a reconveyance, and offer to restore to him the possession, before commencing his action. Page 340.

SAME. — FRAUD. — Suit by the vendee to rescind a conveyance of real estate, for fraud. The fraudulent representation was alleged to be, "that the vendor had a clear and undisputed title to the land," while, in fact, he did not then, nor at any time afterward, have a good and valid title. The deed contained a covenant that the vendor "was lawfully and solely possessed of the title to the land in fee simple," and the vendee had not been disturbed in his possession. *Quaere.* Whether the facts alleged constituted such a fraud as would entitle the vendee to a rescission. Page 340.

SHERIFF's SALE. — After the sale of the mortgaged premises, on a decree of foreclosure, a portion of the judgment remaining unpaid, the sheriff sold certain personal property of the execution defendant to satisfy the judgment. Subsequently, the sale of the real estate was set aside. Suit by the execution defendant to have the full value of the personal

property credited on the decree of foreclosure, alleging that it had been illegally sold, and at a price greatly below its value.

*Held,* that if the sale of the personal property was illegal and void, the sheriff and the execution plaintiff, if he directed the sale, were liable as trespassers, but the execution defendant was not entitled to have his damages ascertained and credited on the decree. Page 342.

SUPPLEMENTAL COMPLAINT. — The office of the supplemental complaint is to bring upon the record such new facts as have occurred since the filing of the original complaint, in order that the court may grant the proper relief upon the facts existing at the time of the final decree. But if the original complaint is wholly defective, and without equity, so that no valid decree could be rendered upon it, the plaintiff cannot sustain his action by filing a supplemental complaint, though the latter may make a case which would entitle him to relief. The cause of action must have existed before the commencement of the suit. Page 343.

MULTIPLICITY OF SUITS. — Suit to enjoin the prosecution of an action to recover the possession of real estate, on the ground that the sheriff's sale, under which the plaintiff claimed, was illegal and void.

*Held,* that as the alleged illegality of the sheriff's sale could have been set up as a defense to the action for the possession of the land, a separate action would only be a useless multiplicity of suits, which ought not to be allowed. Page 344.

APPEAL from the *Vigo* Circuit Court.

ELLIOTT, C. J.—The appellant, on the 13th day of *February*, 1864, filed a complaint in the *Vigo* Circuit Court, against *Stewart*, the appellee, alleging, *inter alia*, that on the 20th day of *July*, 1855, said *Stewart* sold and conveyed to him one thousand acres of land, situated in *Vigo* county, for the sum of $16,000, and also a large amount of stock and personal property, then on said land, for the further sum of $3,000, making in the aggregate the sum of $19,000, of which the plaintiff, at the time of the sale, and soon thereafter, paid to the defendant the sum of $7,000, leaving unpaid the sum of $12,000, for which he executed to *Stewart* his several promissory notes, payable as follows: $3,000 due *April* 1st, 1857; $3,000 due *April* 1st, 1858; $2,000 due *April* 1st, 1859; $2,000 due *April* 1st, 1860; $2,000 due *April* 1st, 1861; all waiving the appraisement laws. And, at the same time, *Stewart* executed and delivered to the plaintiff a general warranty deed for said

land, with a covenant that the grantor "was lawfully and solely possessed of the title thereto in fee simple." The plaintiff and his wife, at the same time, executed and delivered to the defendant a mortgage, on the whole of the land, to secure the payment of said several notes at maturity. That pursuant to said purchase the plaintiff took possession of the land and personal property, and still retains possession thereof; that on the 1st of *May*, 1857, he paid the defendant, on the first of the described notes, the sum of $520   and, on the 13th of *April*, 1858, the further sum of $2,100.

On the 29th of *January*, 1859, the plaintiff and his wife executed to the defendant their warrant of attorney, authorizing *Harvey D. Scott*, or any other attorney at law, to appear in the *Vigo* Circuit Court, and confess a judgment against the plaintiff for the balance of the purchase money then due on said notes, and for the foreclosure of the mortgage. That at the *March* term, 1859, of said court, a judgment was rendered by confession, on said warrant of attorney, against the plaintiff, for the amount due on the notes, and for a foreclosure of the equity of redemption, under said mortgage, and for the sale thereof, without the benefit of appraisement, and that, in the event the lands did not sell for a sum sufficient to satisfy said decree, interest and costs, the residue should be levied of any other property of the plaintiff; that on the 13th of *April*, 1859, and after the rendition of said decree, the appellant paid thereon the sum of $1,500. That on the 4th of *December*, 1860, the defendant caused a certified copy of the decree, with an order of sale, to be issued by the clerk of said court to the sheriff of *Vigo* county, by virtue of which the sheriff advertised and sold the whole of said land, on the 9th day of *February*, 1861, to the defendant, for the sum of $3,000, and executed to him a deed therefor. That the said sale by the sheriff was fraudulent and void, as the defendant well knew, yet he afterward, on the 25th of *February*, 1861, caused

and procured the sheriff to levy said decree, or order of sale, upon a large amount of personal property of the plaintiff, (a schedule of which is set out in the complaint,) of the aggregate value of $1,985, which, on the 25th of *February*, 1861, the sheriff, by the direction and procurement of the defendant, sold and sacrificed for the sum of $570 30, the defendant becoming the purchaser of a part thereof, whereby the whole of said personal property became lost to the plaintiff.

The complaint further alleges that the defendant brought an action in the *Vigo* Circuit Court, to recover the possession of said land from the plaintiff herein; that said action was tried in the *Clay* Circuit Court, at the *September* term thereof, 1863, upon which trial, it was adjudged and decreed by the court that the sale and conveyance of the land by the sheriff to the defendant was fraudulent and void, and that a judgment in said action was accordingly rendered by the court, in favor of the plaintiff and against the defendant, which remains in full force and unreversed. That since the rendition of said judgment, the defendant, without accounting to the plaintiff, or offering to account, for the value of the personal property so illegally sold, has caused the clerk of said *Vigo* Circuit Court, to issue another copy of the decree or order of sale to the sheriff of said county, and has ordered and directed said sheriff to offer the lands again for sale, according to the terms of said decree; that the sheriff has accordingly advertised the same for sale on the 13th day of *February*, 1864.

It is also alleged that, at the time of the sale of the land to the plaintiff, the defendant represented to the plaintiff "that he had a clear and undisputed title thereto," and that, confiding in the truth of said representation, the plaintiff "did not then investigate the title, nor require of the defendant an abstract of his title, nor the exhibition and delivery of his title deeds, but purchased the same solely upon the representation of said defendant, who

then told said plaintiff that he had a good and perfect title, in fee simple, to the whole of said one thousand acres of land," and that "he never did investigate, or cause to be investigated, the title which said defendant had to said land, until since the said defendant has caused the said last order of sale to be issued and placed in the hands of the sheriff, and since the sheriff has advertised said lands for sale." It is further averred that *Stewart,* the defendant, "never had a good and valid title, in fee simple, to all of said lands, and that he well knew the fact at the time of the sale and conveyance thereof to the plaintiff; that said defendant had not, at the time of said sale, and never had, a good and valid title, in fee simple, to three hundred and twenty acres of said land," (which are particularly described,) and that said three hundred and twenty acres constitute an important and material part of said tract of one thousand acres; and that he would not have purchased the land if he had known, or believed, that the defendant did not have a good title to the whole tract. That on the 2d day of *February,* 1864, he made a proposition in writing to said defendant, "to the effect that inasmuch as he, (the defendant,) had deeded to him, (the plaintiff,) lands to which he had no title, to the extent of three hundred and twenty acres, the said contract of sale should be rescinded, by his reconveying to said defendant all the land which the defendant had conveyed to him, and accounting to said defendant for the reasonable rental value thereof while the same had been in his possession, and giving him, said defendant, possession of the same, upon condition that the said defendant should repay him, the said plaintiff, the said sum of $11,120, with interest, and allow him for the improvements put upon said lands, of the value of $3,000, and also allow him, said plaintiff, for the personal property which he, said defendant, had caused to be wrongfully sold as aforesaid, and consent to such rescission; and for the purpose of ascertaining how the accounts would stand

between him and said defendant, upon such rescission, he proposed that two disinterested men should be chosen by him and said defendant, each choosing one, and they a third one, if said defendant thought fit, with an agreement that the matters in difference between them may be stated to the persons thus chosen, and they settle the rights of said plaintiff and said defendant, and that their award should be final." That said proposition was rejected by said defendant. "And said plaintiff now brings into court a deed, conveying all the interest of said plaintiff and wife in said lands, to said defendant."

The complaint prays for a rescission of the contract upon such conditions as the court may prescribe; or that the court decree that the value of said three hundred and twenty acres of land, at the rate of $16 per acre, be deducted from the sum which the plaintiff agreed to pay the defendant for the whole tract, and that said amount be credited on the decree of foreclosure. That the defendant be also required to account for the full value of the personal property, which it is alleged was wrongfully and illegally sold by the sheriff, on said decree of foreclosure, and that the same be also credited on said decree.

The complaint is sworn to, and contains a prayer for an injunction against the defendant and the sheriff, restraining and enjoining a further sale of said lands under the decree of foreclosure, until the final hearing of the complaint.

The complaint was demurred to, for the reason that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer on the 16th day of *March*, 1864, and on the 19th of the same month, the plaintiff filed an amendment to his complaint, which alleges, in substance, that after the filing of the original complaint, an order was issued to the defendant, *Stewart*, and *Kern*, the sheriff, by the Hon. CHAMBERS Y. PATTERSON, Judge of the Common Pleas Court of said county, whereby they were temporarily restrained from selling the lands;

named in the said original complaint, on the day fixed for said sale, in the notice given by the sheriff, and that on the 17th day of *February*, 1864, the Hon. SOLOMON CLAYPOOL, Judge of said *Vigo* Circuit Court, continued said temporary restraining order until the 20th of *February*, 1864. And that the said defendant, *Stewart*, procured the sheriff to offer and expose said land for sale under said decree of foreclosure, on the 22d of *February*, 1864, without having given any public notice thereof, either by publication in a newspaper, or by written notices publicly posted up in said county, and at a time when, from the want of said notice, there could be no competition in bidding for the land. That the whole of said lands, at said sale, were struck off by the sheriff to said defendant *Stewart*, for the sum of $8,600. That said sale, for the want of any legal notice thereof, was illegal, fraudulent and void; but that said *Stewart* had procured the sheriff to execute to him a deed conveying to him the whole of said lands; that said *Stewart* had commenced an action in said *Vigo* Circuit Court to recover possession of said land, which was then pending and for trial at the then present term of said court. The amendment concludes with a prayer for an order against *Stewart*, restraining the prosecution of the action for the possession of the land, and that, on the final hearing, the court would set aside said sheriff's sale and conveyance of the land as fraudulent and void.

The court sustained a demurrer to the amended complaint, and rendered a final judgment thereon against the plaintiff for costs, to which ruling and judgment of the court the plaintiff excepted, and appealed to this court.

The question presented, therefore, is, did the court err in sustaining the demurrer to the amended complaint?

The appellant insists that, from the showing in the complaint, he is entitled to a rescission of the contract. The complaint is in the nature of a suit in chancery, and it is well settled that an application for the rescission of

a contract is addressed to the sound discretion of a court of chancery, but that discretion can be exercised in conformity to established principles. It is a general rule that a contract will not be rescinded, even for fraud, unless the contracting parties can be restored to the same situation occupied by them, respectively, when the contract was entered into, nor unless the application for a recission be made within a reasonable time. *Cain* v. *Guthrie*, 8 Blackf. 409; *Johnson* v. *McLane*, 7 Blackf. 501; *Gatling* v. *Newell et al.*, 9 Ind. 572; *Barton et al.* v. *Simmons*, 14 Ind. 49.

A party who seeks the aid of the court to compel the rescission of a contract for fraud, must show that he has exercised at least reasonable diligence in ascertaining the facts, if readily within his power, and has been prompt in seeking his remedy within a reasonable time after the facts constituting the fraud are discovered. The relief is granted to the vigilant, but denied to the negligent.

Here, the alleged fraudulent representation as to the defendant's title was made, and the contract consummated, in 1855. The plaintiff admits, in his complaint, that, relying upon the defendant's representation that his title was clear and undisputed, he did not investigate the title at the time of the purchase, nor require of the defendant the exhibition of his title deeds, or an abstract of his title, and that he had never examined or investigated the title until within a few days prior to the filing of the complaint, on the 13th day of *February*, 1864, a period of over eight years after the date of the contract. During all this time, the plaintiff was in possession of the land. The records of the public offices, where the evidence of the defendant's title would likely be found, were of easy access, and open to his inspection, but he failed to examine them, or to use any other means to ascertain whether the representations of the defendant, as to the validity of his title, were true or false; and in the meantime, in 1859, he voluntarily executed a warrant of attorney, authorizing the confession of the judgment and the foreclosure of

the mortgage, which he now seeks to enjoin. These facts not only fail to show diligence in ascertaining the condition of the defendant's title, such as entitles the plaintiff to claim a rescission of the contract, but, on the contrary, exhibit a case of extreme negligence, which forbids that such relief should be extended to him.

The complaint is bad for another reason. The land and the stock and personal property were sold at the same time, and, though a separate price was affixed to each, the sale of the one seems to have been an inducement to that of the other, and it was treated by the parties as an entire contract. The two sums were aggregated, and the amount paid was deducted from the aggregate, and the notes given for the residue, secured by the mortgage. The plaintiff does not offer to return the stock and personal property, nor is it probable that he could now do so. He even fails, in his complaint, in any manner, to offer to account for its value. Besides, he has been in the quiet and undisturbed possession of the land for over eight years, changing its condition, enjoying its rents and profits, and claims to have made lasting improvements on it, to the value of $3,000, for which he claims that the defendant should be compelled to account. It is evident, therefore, that he cannot restore to the defendant what he received from him, or place him in the condition he was at the time of the contract, and he is not, therefore, entitled to a rescission.

There is yet another reason why the complaint is insufficient to entitle the plaintiff to a rescission of the contract. If the facts otherwise justified that relief, still he is not entitled to it, unless, before bringing his suit, he executed a reconveyance of the land, and tendered it to the defendant, and, at the same time, restored, or offered to restore, to him the possession. The complaint does not show that he did either. It is stated in the complaint that the plaintiff had executed such a conveyance, and brings it into court for the defendant, but there is no averment that it had

been tendered to the defendant, while it is admitted in the complaint that the plaintiff still holds possession of the land, and refuses to yield it up to the defendant. He cannot insist on holding possession of the land, and, at the same time, claim a rescission of the contract. *Comparet* v. *Hedges,* 6 Blackf. 416; *Shaeffer* v. *Sleade,* 7 Blackf. 178; *Gatling* v. *Newell et al., supra; Gaar* v. *Lockridge,* 9 Ind. 96, and the authorities there cited; *Cressey et al.* v. *Webb,* 17 Ind. 14. The proposition which it is alleged the plaintiff made to the defendant to rescind the contract, and settle the matter between the parties, does not aid the plaintiff's case. It demands greatly too much. It requires that the defendant should not only rescind the contract, but that he should refund to the plaintiff the entire amount paid by him thereon, with interest, without offering to account to the defendant for the $3,000, the contract price of the personal property received and retained by the plaintiff. It also requires that the defendant should pay for the improvements made by the plaintiff on the land, and account for the full value of the personal property levied on and sold by the sheriff, as the plaintiff claims, illegally, and concludes by requiring that the defendant should agree to submit the settlement of all the matters to arbitrators. This is not an offer to place the defendant in *statu quo.*

We have examined the question, thus far, upon the hypothesis that the alleged representation of the defendant, that his title to the land "was clear and undisputed," taken in connection with the covenant in the deed, that he was "lawfully and solely possessed of the title to the land in fee simple," with the negative averment that the defendant did not then, or at any time thereafter, have a good and valid title, in fee simple, to three hundred and twenty acres of the land, constituted such a fraud as could entitle the plaintiff to a rescission of the contract, but we do not decide that question. The alleged representation asserts nothing more than is contained in the covenant

in the deed. The plaintiff had a full opportunity of ascertaining the condition of the title by an examination of the record; he took possession of the land under his purchase, and has remained in the undisturbed and peaceable possession thereof ever since. It is not averred in the complaint that the defendant had no title whatever to the three hundred and twenty acres, but only that he did not have a good and valid title in fee simple. This averment may be true, and still the defendant may have had a valid title in equity, under which he could defend the possession; or he may have been seized of a less estate than an absolute fee. Under such circumstances, there is authority for saying that the plaintiff is not entitled to a rescission of the contract. See 2 Smith's Leading Cases, 167. But upon this point we decide nothing.

But the plaintiff insists that, if not entitled to have the contract rescinded, he is, at least, entitled to have the full value of the personal property, which it is averred the defendant unlawfully procured the sheriff to levy on and sell under the decree of foreclosure, (and which, it is alleged, was sold at a price greatly below its value,) credited on the decree.

If the judgment of the Circuit Court, declaring the sale of the land by the sheriff, under the order of sale, to be fraudulent and void, rendered the subsequent sale of the personal property also illegal and void, as is contended by the plaintiff, still we know of no authority that would authorize or justify the court in compelling the defendant to credit the value of it on the decree, and the plaintiff has referred us to none. If the levy and sale of the personal property were illegal and void, the sheriff cannot justify the act under the decree of foreclosure, and he and the defendant, if the latter directed the act, are, therefore, trespassers, and are liable, in a proper action, for damages. But the fact of such liability would not entitle the plaintiff to have such damages ascertained, and

credited on the decree of foreclosure, or justify an order enjoining the collection of any portion of such decree.

The only remaining ground upon which the appellant claims that the demurrer to the complaint should have been overruled, is that the second sale of the land, made by the sheriff on the 22d of *February,* 1864, under the averments in the amendment to the complaint, is illegal and void, and that he is entitled to the relief prayed for in the amendment. The amendment to the complaint alleges that the sheriff advertised that the land would be offered for sale on the 13th of *February,* 1864, but that, under the original complaint, the sale was enjoined by temporary restraining orders of the court, until the 20th of *February,* and that the defendant fraudulently procured the sheriff to offer and expose it to sale on the 22d of the same month, without having first given any notice whatever of said sale, and that the defendant became the purchaser, for the sum of $8,600. Under these averments, the sale was illegal and void. *Givan* v. *Doe ex dem. Crawford,* 5 Blackf. 260. The amendment is, in effect, a supplemental complaint, and contains the averment of facts which occurred after the filing of the original complaint. It might be valid as such, if it aided and supported the allegations in an original complaint that entitled the party to the equitable relief prayed for therein. The office of the supplemental complaint, in such a case, is to bring upon the record such new facts, that the court may grant the proper relief upon the facts existing at the time of the final decree. But if the original complaint is wholly defective, and without equity, so that no valid decree can be rendered on it, the plaintiff cannot, by filing a supplemental complaint founded upon matters which have taken place subsequent to the commencement of the suit, sustain the proceedings originally commenced. 1 Paige 169.

Here, as we have seen, the original complaint was defective, and under it the plaintiff could not sustain the action,

and a demurrer had been sustained to it by the court below. If the amendment, therefore, can be sustained as entitling the plaintiff to any relief, it must be upon the ground that it contains within itself a valid cause of action, and, as the facts set up have occurred since the filing of the original complaint, they cannot be engrafted upon that complaint so as to sustain it, for the cause of action must have existed before the commencement of the suit.

But we do not think that the amendment contains any ground for the equitable relief prayed. It shows that, under the sheriff's sale, the defendant had procured a deed conveying to him the land, and had commenced an action, in the same court, for its possession, which is still pending and undisposed of. The right of the appellant to set up the facts alleged in his amended complaint, if true, as a defense to the appellee's action for the possession of the land, and to the same relief claimed under the amendment, is clear and undeniable. What benefit, then, can he derive by enjoining the prosecution of that suit, and trying the same facts that would properly arise under his defense therein, in an original action commenced by himself? We can conceive of none. And to sustain the complaint, under the amendment, if otherwise unobjectionable, would be to encourage a useless multiplicity of suits, which the law never justifies.

We think the demurrer was correctly sustained, and hence the judgment should be affirmed.

The judgment is affirmed, with costs.

*J. P. Baird, R. W. Thompson* and *Scott & Pierce,* for appellant.

*Smith* and *Mack,* for appellee.