(69 N. W. Rep. 185.)

---

SWEDISH AMERICAN NAT'L BANK *vs.* DICKINSON COMPANY, *et al.*

Opinion filed November 19th, 1896.

**Supplemental Complaint—When Proper.**

> The facts embodied in a supplemental complaint under the code must relate to the cause of action set forth in the original complaint, and must be in aid thereof.

**New Cause of Action Cannot be Alleged in Supplemental Complaint.**

> It is not proper to bring into a case, by supplemental complaint, new facts which have arisen since the action was commenced, and which by themselves constitute a new and independent cause of action, without reference to the facts alleged in the original pleading.

**Judgment in Foreign State—Bar.**

> Accordingly, *held*, that when, pending an action upon notes, judgment thereon was recovered in another state, the plaintiff could not file a supplemental complaint alleging recovery of such judgment, but that the rendition thereof constituted a bar to the further prosecution of the action.

Appeal from District Court, Cass County; *McConnell*, J.

Action by the Swedish American National Bank against the Dickinson Company and C. G. Dickinson. From an order

refusing permission to file a supplemental complaint, plaintiff appeals.

Affirmed.

*Newman, Spalding & Phelps,* for appellant.
*Ball, Watson & Maclay,* for respondents.

CORLISS, J. The sole question of law at issue on this appeal relates to the extent of the power of the District Court to allow a plaintiff to file a supplemental complaint. The causes of action set forth in that pleading in this case were promissory notes. While this suit was pending the plaintiff recovered in the State of Minnesota, against the same defendants, a judgment upon the identical causes of action embraced in the complaint. Thereafter its counsel applied in this action to the District Court for permission to file a supplemental complaint, averring the recovery of this judgment. The court refused to grant this motion, on the sole ground of a want of power. The correctness of this ruling is the only question before us. Should we reach the conclusion that the power exists, it would be our duty to reverse the judgment and order appealed from, and direct the District Court to bring to bear upon the application its judicial discretion. But, in our judgment, the court did not err in its decision. A few fundamental principles of law control this case. It has long been the doctrine that a final judgment merges, within the jurisdiction in which it is rendered, the original cause of action on which it is founded. 1 Freem. Judgm. §§ 215–217; 15 Am. and Eng. Enc. Law, 336. This rule applies in this country to judgments rendered in the different states, on the ground that, under the provisions of the federal constitution, they are practically assimilated to domestic judgments. 1 Freem. Judgm. § 221; 15 Am. and Eng. Enc. Law, 341; *Barnes* v. *Gibbs,* 31 N. J. Law, 317; *Bank of U. S.* v. *Merchants' Bank of Baltimore,* 7 Gill, 415; *Bank* v. *Wheeler,* 28 Conn. 433; *Rogers* v. *Odell,* 39 N. H. 452; *McGilvray* v. *Avery,* 30 Vt. 538; *Child* v. *Powder Works,* 45 N. H. 547; 2 Black, Judgm. § 864. A different rule applies in the case of a

foreign judgment. 2 Black, Judgm. § 847. The origin of this rule was the technical basis of the doctrine of merger. It was supposed to rest upon the principle that a higher security or evidence of liability swallowed up that of inferior character. A foreign judgment not being regarded in England as technically a matter of record, the foreign judgment was not there looked upon as an evidence of indebtedness superior to the claim on which it was founded. See cases cited in 2 Black, Judgm. § 847; 2 Freem. Judgm. § 220; 15 Am. and Eng. Enc. Law, 341, note 7. In this country there has been a disposition to follow the English decisions in all cases not falling within the class of judgments specified in the federal constitution. See 2 Black, Judgm. § 847. But if a foreign judgment is, on sound principles of private international law, conclusive between the parties, there is no reason, save an extremely technical one,—a reason unsuited to jurisprudence in its present stage of development,—why such a judgment should not in every civilized country be treated as merging the original cause of action upon which it rests. As Chief Justice Beasley said in *Barnes* v. *Gibbs*, 31 N. J. Law, 317: "The doctrine of merger arises out of the quality of the judgment which renders it conclusive upon the parties as to the questions which it involves." See, also, Freem. Judgm. § 220; *Jones* v. *Jamison*, 15 La. Ann. 35.

From these elementary principles to which we have referred, we are forced to deduce the conclusion that, the moment the judgment was recovered in Minnesota, the plaintiff's causes of action on the notes sued upon were utterly extinguished. This judgment would, if pleaded, by the defendants, constitute a complete bar to the further prosecution of the action. 15 Am. and Eng. Enc. Law, 341, note 5; *Rogers* v. *Odell*, 39 N. H. 452; *McGilvray* v. *Avery*, 30 Vt. 538; *Bank* v. *Wheeler*, 28 Conn. 433; *Child* v. *Powder Works*, 45 N. H. 547; *Bank of U. S.* v. *Merchants' Bank of Baltimore*, 7 Gill, 415.

How the plaintiff can gain any advantage by setting forth in its own pleading facts which, if averred in the answer, would

constitute a perfect defense to the further prosecution of the suit,. is beyond our comprehension   The office of a supplemental bill in. equity was to bring into a case, by a new pleading, facts which had occurred or become for the first time known to the plaintiff sub-. sequently to the commencement of the action, and which related to the case set forth in the original bill.   Just how far the courts of chancery will go in permitting new facts to be brought by supplemental bill into a pending suit in equity has never been stated with the utmost precision.  But there are two general classes of cases with respect to which the law on this subject has been for many decades very clearly settled.  If the original bill is not defective in substance, new facts may, by supplemental bill, be incorporated into the cause of action, although they necessitate an. enlargement or change in the character of the relief originally sought.   But in every decision on this point the qualification is stated or plainly to be inferred from the opinion that a new cause of action cannot be substituted for the one set forth in the original pleading.  *Jacob* v. *Lorenz*, (Cal.) 33 Pac. Rep. 119–121; *Candler* v. *Pettit*, 1 Paige, 168; *Jaques* v. *Hall*, 3 Gray, 194; *Winn* v. *Albert*, 2 Md. Ch. 42; *Edgar* v. *Clevenger*, 3 N. J. Eq. 258.   But in the case at bar the plaintiff does not seek to enlarge its relief, or to alter the character thereof.  It merely asks that it be. allowed to obviate a perfect defense to its causes of action on the notes, and recover the same money judgment upon an entirely distinct cause of action, not in existence when it brought the suit, but arising subsequently to its commencement.   No adjudication, no statute, no principle of law or equity, can be found to sustain its contention in this behalf.   In interpreting our statute permitting the filing of supplemental complaints, we must fall back upon the settled practice in chancery before the adoption of the code.   The statute embodies the rule of procedure in equity.   It has merely made applicable to actions at law, as well as suits in equity, the rules prevailing in chancery with respect to supplemental pleadings.   Counsel for plaintiff does not claim that our

statute has any wider scope; and he could not successfully make such contention in view of the language of the statute that the new facts must be material to the case, and the fact that in other states similar provisions have been uniformly treated as merely voicing the existing rule of practice in equity. *Prouty* v. *Railroad Co.*, 85 N. Y. 272–275; *Buchanan* v. *Comstock*, 57 Barb. 583; *Wattson* v. *Thibou*, 17 Abb. Prac. 184; *Bank* v. *Duryee*, 74 N. Y. 491–495; *Gleason* v. *Gleason*, 54 Cal. 135, 136; *Jacob* v. *Lorenz*, (Cal.) 33 Pac. Rep. 119–121; *Eastman* v. *Power Co.*, 17 Minn. 48, (Gil. 31;) *Bull* v. *Rothschild*, (Sup.) 4 N. Y. Supp. 826; *Tiffany* v. *Bowerman*, 2 Hun. 643–646; *Cohn* v. *Husson*, 67 How. Prac. 461. In this connection it is well to state the other general rule on the subject of supplemental bills in equity. It is a rule of limitation of power. The plaintiff cannot, by supplemental pleading, bring into the action a distinct cause of action arising since the beginning of the suit. Every one of the decisions last above cited recognizes this rule. And in most of these cases it is enforced under a statute identical in its language with ours. If the original bill is defective in substance, the plaintiff cannot, by supplemental bill, bring into the case new facts constituting a distinct cause of action, which has arisen since the suit was instituted. *Milner* v. *Milner*, 2 Edw. Ch. 114; *Putney* v. *Whitmire*, 66 Fed. 388; *Bernard* v. *Toplitz*, (Mass.) 35 N. E. Rep. 673; *Fahs* v. *Roberts*, 54 Ill. 195; *Patten* v. *Stewart*, 24 Ind. 332–343; *Orton* v. *Noonan*, 29 Wis. 547; Story Eq. Pl. § 339.

The groundwork of this doctrine is that the plaintiff cannot recover on a cause of action which does not exist when he sues. He must dismiss his action, and plead anew. It follows from this that the rule that a new cause of action, which had not accrued when the writ was served, cannot be brought into the case by supplemental complaint, applies not only to cases where no cause of action existed at all when the suit was brought, but also to cases where a cause of action was in existence, and was set forth in the original complaint, and the plaintiff seeks to abandon that cause of action, and inject into the suit an entirely different

cause of action; and the authorities cited below fully sustain this proposition. Indeed, this practice of changing the cause of action has never been sustained even in a case where the new cause of action was in existence when the suit was commenced. Much less should this be allowed when the cause of action sought to be made the basis of the suit by supplemental complaint arose during the pendency of the case. *Milner* v. *Milner*, 2 Edw. Ch. 114; *Eastman* v. *Water Power Co.*, 17 Minn. 48, (Gil. 31;) *Prouty* v. *Railroad Co.*, 85 N. Y. 272–275; *Buchanan* v. *Comstock*, 57 Barb. 583; *Wattson* v. *Thibou*, 17 Abb· Prac. 184; *Cohn* v. *Husson*, 67 How. Prac. 461, 462; *Gleason* v. *Gleason*, 54 Cal. 135; *Bull* v. *Rothschild*, (Sup.) 4 N. Y. Supp. 826; *Tiffany* v. *Bowerman*, 2 Hun. 643–646. In this last case the court said: "It seems only necessary to state the facts, in order to show that the motion for leave to file this supplemental complaint for such a purpose should have been at once denied. A supplemental complaint must be consistent with, and in aid of, the case made by the original complaint. A new and substantive cause of action cannot be set up, by way of supplemental complaint, as a ground of recovery; more especially a cause of action to which the plaintiff was not entitled when he commenced the action." In *Prouty* v. *Railway Co.*, 85 N. Y. 272, the court said: "The principle invoked by the appellant to sustain this theory is the well established doctrine that the plaintiff cannot file a supplemental bill to introduce new facts which have occurred since the filing of the original bill, and upon which a decree can be had without reference to the original bill; and in such case the original bill should be dismissed and a new one filed." In *Gleason* v. *Gleason*, 54 Cal. 135, the court said: "This is, therefore, a new controversy between them,—a new and independent cause of action about the title to property acquired since the judgment; and it is not allowable to substitute a new and distinct cause of action by way of supplemental complaint." In *Eastman* v. *Water Power Co.*, 17 Minn. 48 (Gil 31,) the court states the rule to be that "a supplemental complaint must be for the same

substantive cause of action as that set out in the original com-
plaint." The doctrine as it was enunciated by the vice chancellor
in *Milner* v. *Milner*, 2 Edw. Ch. 114, has never been questioned,
and is undoubtedly sound. The vice chancellor said: "The
question to my mind is whether the complainant, upon her
intending to rely upon the new facts, must not file an entirely
new bill. I consider it not a case for amendment or supplemental
bill. The latter is generally filed to continue the original suit, or
is in its matter, directly connected with it, and because of the
original bill being somewhat defective. But here there is a new
substantive cause of action, upon which a decree can be had
without connecting it with the original bill. The complainant is
here wanting to go upon entirely new ground; in fact, to make a
new case. If this is to be done, it must be by a dismissal
of the present bill, and filing of a new one. I must refuse
this motion." The decision of the court in *Barnes* v. *Gibbs*,
31 N. J. Law, 317, is directly in point. The court was called
upon to decide whether a supplemental complaint could be
filed setting up the recovery of a judgment upon the claim sued
upon, and the ruling of that tribunal was that this could not be
done. Chief Justice Beasley, speaking for the full bench said:
"The case certified calls for the opinion of this court on a second
point, viz. whether, upon the assumption of a merger having
taken place, the writ and pleadings in this case can be so
amended as to transform the action from assumpsit to debt, and
to permit the judgment obtained in New York to become the
foundation of the suit? Allowing the utmost amplitude to the
power of this court to alter forms and correct errors, the present
application seems to be much beyond the scope of such power.
It is obvious that the proposition is not to amend defects, but to
substitute one cause of action for another. Besides, even if the
court should permit the proposed commutation to be made, it
would not avail the plaintiffs, because the ground of action
sought to be substituted has arisen since the commencement of
this suit."

But it is urged that there is authority for the proposition that a supplemental complaint may embrace such matters as are sought to be incorporated in the complaint in the case at bar, and that such authority should be followed. To sustain this claim, the case of *Jenkins* v. *Bank*, 127 U. S. 484, 8 Sup. Ct. 1196, is cited. But, in our opinion, that case is plainly distinguishable from the case now before us. That action was instituted to foreclose a lien upon certain property pledged as collateral to a debt. Pending this action, a decree was rendered in another case which so adjudicated the amount due upon the claim to secure which the collateral security had been given as to preclude the relitigation of that question in the pending suit. The Supreme Court of Illinois and the Supreme Court of the United States both held that it was proper to incorporate in a supplemental bill the fact of the rendition of this decree. But it is obvious that there is no parallel between that case and the action which is before us. The cause of action in that case was not the indebtedness, but the lien. The object of the action was to foreclose that lien. The plaintiff did not seek to change the object of the action, nor did he attempt to incorporate in his supplemental bill a new cause of action. The lien constituted his sole cause of action before the supplemental bill was filed and it still remained his sole cause of action after the decree had been rendered, and after the fact that it had been rendered was brought into the case by the supplemental bill. The action was not originally brought upon the indebtedness, but it was founded upon the lien; and this continued to be the cause of action after the supplemental bill had been filed. The lien was not divested by the decree which conclusively established the amount due. 2 Freem. Judgm. § § 229, 230, and cases cited. In both of these courts the distinction was made which we here outline. Had the action been, not to foreclose a lien, but to recover a money judgment on the indebtedness, it is apparent from the language of both these tribunals that their decisions would have been different. The Illinois Supreme Court said on this point at pages 470 and 471, 111 Ill.

(*Jenkins* v. *Bank*:) "We do not consider the supplemental bill as introducing a new cause of action. The indebtedness is the same. The evidence of it at the time of filing the original bill in this case consisted in notes from Walker to the bank. The notes have since, as said, become merged in the Wilshire decree. There has been, then, a change in the evidence of the indebtedness,—from notes to a decree upon them. That is all. The collaterals sought to be foreclosed by sale of them were pledged for the payment of the indebtedness. A decree upon the notes, and the running of the statute of limitations against the decree, is not any payment of the indebtedness. The simple effect is that the statute is a bar to a suit upon the decree. The collaterals may be held until the indebtedness is paid according to the terms of the pledge. We do not consider that there has been any new suit brought upon the decree, but that there is, under the supplemental bill, the assertion of the right to claim the benefit of the Wilshire decree as *res ajudicata*, and that the statute of limitations set up is not a bar to that right." And in the Federal Supreme Court the same distinction is stated in the following language: "In support of this proposition, it is argued, on behalf of the plaintiff in error, that the supplemental bill set out, and sought a recovery upon, a cause of action distinct from that stated in the original bill. The original bill prayed for a decree against Walker upon his notes held by the bank, and, for the satisfaction thereof, a sale of the property held as security therefor. During the pendency of that bill, precisely the same matters were put in issue in the Wilshire suit between Walker and the bank, and in that suit a decree was rendered finding the amount due. That decree in the Wilshire suit stands unreversed, and operates as an estoppel by way of *res adjudicata* between the parties. By way of proof or in pleading, it would be good as a bar in any subsequent suit between the same parties upon the same issues. Having been rendered after the institution of the present suit, it was competent for the complainant to bring it forward, by a supplemental bill, as conclusive evidence of the

amount due, for which it was entitled to take a decree, and as a complete answer to the defense set up by the plaintiff in error, as the assignee of the bankrupt, to the relief prayed for in the original bill, and to the relief sought by the cross bill. It was strictly new matter arising after the filing of the bill, properly set up by way of supplemental bill, in support of the relief originally prayed for. It can in no sense be considered as a new cause of action. It was not a bill to enforce the decree, nor was the complainant obliged to rely upon it as the sole ground of recovery, on the ground that the original cause of action had become merged in it. If the notes were merged in the decree, it was simply a change in the nature of the evidence to support the complainant's title to relief. The indebtedness remained the same, and the equity of the complainant to a foreclosure and sale of the securities remained unchanged." In fact, the courts in that case were but applying the familiar rule that the holder of collateral security may, in the absence of a statute to the contrary, recover a personal judgment upon his claim, and thereafter foreclose his lien notwithstanding such judgment. See 1 Freem. Judgm. § § 229, 230; *Bank* v. *Brown,* 112 Ind. 474, 481, 482, 14 N. E. Rep. 358. The cause of action in such a foreclosure suit being the lien, the recovery of a judgment on the debt before or after the commencement of the foreclosure action does not create a new cause of action; does not extinguish the old. The original lien continues in existence, securing the new evidence of the debt the same as it did the old. By the recovery of a judgment, the cause of action is not wiped out. The only effect is to conclusively establish the amount which the lien secures. It is a significant fact that in New York the legislature has, in express terms, incorporated into the statute regulating the filing of a supplemental complaint a provision that the plaintiff may in this way bring into the case "the judgment or decree of a competent court, rendered after the commencement of the action determining the matters in controversy or a part thereof." Code Civ. Proc. N. Y. § 544. It is evident that in New York the law was

considered to be settled the other way, in the absence of an explicit statute on the point. Our code merely permits the plaintiff to set up in his supplemental bill "facts material to the case." Rev. Codes, § 5301. What in this action is "the case" of the plaintiff as his suit was originally brought? The answer is obvious. It is the cause of action set up in his complaint. That constitutes his case. Another and entirely distinct cause of action does not constitute his case, as it appears in his original pleading. As we have already seen, the decisions are unanimous to the effect that, under just such a statute as ours, the plaintiff cannot, by supplemental complaint, introduce a new and distinct cause of action.

The argument of hardship does not appeal to us with any force. It is true that in this case—and it will likewise be true in many other cases—a refusal to allow the subsequent recovery of the judgment to be set up in a supplemental complaint will result in the loss of priority of lien upon property secured by an attachment in the action, because the plaintiff will be compelled to dismiss his action upon the claim, and bring a new suit upon the judgment itself. This same argument was advanced in *Bank* v. *Wheeler*, 28 Conn. 433, against the proposition that the effect of the recovery of a judgment in one state was to extinguish the original cause of action in every other state. It will be observed that the precise question here presented was there involved, for if the judgment extinguishes the original cause of action, and creates a new cause of action, there is no logical escape from the conclusion that the suit cannot be kept alive by supplemental complaint. On this point of hardship the court says: "The plaintiffs urge the inconvenience arising from holding the judg-in New York to be a defense in the present suit, in consequence of the loss of the security obtained by attachment in the latter. We are not, however, at liberty to impair the effect which the constitution and laws of the United States give to judgments rendered in the several states, although it may be attended with inconvenience, or even apparently unjust consequences. The remedy is

elsewhere. When suits are pending in different states upon the same cause of action, the plaintiff must elect in which he will proceed to final judgment." And in two other cases, in which it was held that the recovery of a judgment upon the claim sued for was fatal to the further prosecution of the action, it appears that the attachments had been issued and levied, and that, of course, the liens secured thereby would be lost. *Bank of U. S.* v. *Merchants' Bank of Baltimore*, 7 Gill, 415; *Child* v. *Powder Works*, 45 N. H. 547, (see 549, 550.)

The recovery of the judgment in Minnesota was the result of the voluntary act of the plaintiff. It could have kept alive this action by refraining from entering judgment in the Minnesota suit, and in this way it could have preserved its lien. But it did not see fit to do so. It frequently happens that the judgment rendered is not a personal judgment in more than one state, jurisdiction being acquired in other state solely over property by attachment or garnishment. A judgment purely *in rem* would not merge the cause of action on the original claim, and therefore would not constitute a bar to an action thereon in another jurisdiction. *Whittier* v. *Wendell*, 7 N. H. 257; *Fritzsimmons* v. *Marks*, 66 Barb. 333; *Rangeley* v. *Webster*, 11 N. H. 299; 1 Freem. Judgm. § § 218, 219. In many cases there will therefore be no hardship to the creditor. In many others he will hold in his own hands the power to prevent a merger. And, over against the loss of priority of lien which may in a few cases result from this doctrine, it is proper to set the moral right of the debtor not to be harassed by numerous suits upon the same demand at the same time. The rule being settled that the pendency of an action in a foreign state or country does not constitute a good plea in abatement, the debtor has no legal protection against the institution of any number of actions against him in different jurisdictions upon the same claim. It would therefore seem to us not a matter for regret that his moral right to be exempt from undue harassment should receive some slight legal sanction. If, however, it be thought that a different rule

should prevail, the arguments in that behalf should be addressed to that body whose province it is to make, and not to the department whose duty it is to declare, the law.

The order and judgment of the District Court are in all things affirmed. All concur.

## ON RE-HEARING.

Counsel for plaintiff very earnestly press upon us the reconsideration of the point which seemed to us so clear that we did not discuss it at length. They concede the doctrine of merger, and the rule that the supplement bill must not embody facts creating an independent cause of action. Their whole contention ranges around the question, what is the real cause of action in this case? They insist that the debt is the primary right, and that this right, in connection with defendant's failure to respect it, constitutes the cause of action. Hence it follows, they urge, that that cause of action was not extinguished by the judgment, but exists today as much as ever it did, despite the fact that it has assumed a new form. There is much ambiguity on this subject. Jurists have found it difficult to define with precision the meaning of the phrase "cause of action." While it may be that this is a difficulty which inheres in the subject itself, and is therefore unsurmountable, yet we do not consider that there should be, despite this fact, much controversy in a case like this as to the cause of action set up in the original complaint. If counsel's claim that the debt is the cause of action be sound, then there is no distinction between an action for services, for goods sold, and for money loaned. In each case there is a debt. But in no two of these suppositive cases did the debt grow out of the same facts. In each of these cases the peculiar distinctive facts out of which the obligation arises are what constitute the cause of action, when coupled with the omission of the defendant to respect the plaintiff's rights thereby established. It is not the mere existence of a debt—an element common to them all—which constitutes the cause of action in either of these cases. If the debt were the cause of action, it would be unnecessary for the

plaintiff to do more than aver in his complaint that the defendant was indebted to him in a specified sum. On this theory the same complaint would do for all actions belonging to these three classes. All that it is necessary for the pleader to do in any case is to set forth the facts constituting his cause of action. No one would think of stopping with a bare allegation of indebtedness; and yet this is all that is required if that indedtedness alone constitutes the cause of action. There is an element common to all causes of action, but it does not of itself constitute a cause of action. In every case there is present the fact that the defendant has neglected to observe his legal duty to the plaintiff. In an action at law to recover money, the cause of action is not simply the withholding of the money from the plaintiff by the defendant. In a sense, that may be said to be the legal wrong for which the law furnishes a remedy. But why is it a wrong of which the law takes cognizance? Because, and only because, by reason of certain antecedent facts, the plaintiff has become vested under the law with a right to demand the money. In seeking for one element of the cause of action, we must go back of the mere right to demand that the money claimed shall not be withheld, and ascertain what are the particular facts out of which that right springs. When we have discovered these facts, we have found out that which differentiates the particular cause of action from another, which, while showing, perhaps, an indebtedness of like amount, arises out of different circumstances. The cause of action is always disclosed by the answer to the inquiry: "How did the defendant become liable to be prosecuted by the plaintiff in this particular action?" It is true that a cause of action is not in cases of contracts complete until the defendant has failed to pay in accordance with his legal obligation. But the foundation for it is, in all such cases, laid before the default occurs; and in many instances this element of default is not a constituent part of the cause of action, as in tort cases, where the cause of action accrues the moment the wrong is committed. No one would speak of the failure of a slanderer of character to indemnify the person

vilified as constituting the latter's cause of action. It is the slander which forms the plaintiff's cause of complaint in such a case. A plaintiff may have three different causes of action against the same defendant,—one for money loaned, one for goods sold, and one for services rendered. If in each case the withholding of the money alone is the cause of action, then all of the causes of action are identical in character. Would this be seriously claimed by any one?

We have used these few observations for the reason that the plaintiff's counsel seem to take the position that in this case the witholding of the money constitutes the cause of action. We will now turn to the plaintiff's contention that the debt, coupled with defendant's default, is the cause of action. If the mere fact that there is a debt, independently of the circumstances out of which such debt arose, constitutes the cause of action in any case, then all legal distinctions are in this regard obliterated. The real essence of this contention is that, in all cases to recover money, it is the original obligation to pay, in connection with defendant's default, which constitutes the plaintiff's cause of action. If this be so, then a cause of action for libel is not affected by the fact that the defendant has, in full settlement of the claim, given his note for a certain sum of money. A note is not actual payment. The original obligation to pay damages lies at the basis of such note. It is, in substance, the same claim as the original claim for damages. So, it is after judgment upon the note. But the cause of action is not the same in each case. The statute of limitations as to each is different. The action for libel would have to be brought within two years after that cause of action accrued. The action upon the note would have to be commenced within six years after that new cause of action, resting upon different facts, accrued. And the action upon the judgment could be instituted within 10 years after that cause of action, based upon still different facts, had accrued. Rev. Codes §§ 5200, 5201, 5203. Sections 5199 to 5201, Rev. Codes, differentiate a cause of action upon a judgment from the cause of action upon the claim upon

which it was rendered. Under these provisions, an action upon contract must be brought within six years after that cause of action accrues; and an action upon a judgment rendered upon the same contract may be brought within ten years after that cause of action—that new and distinct cause of action—accrues. How can it be said that a cause of action upon a judgment accrues if no cause of action upon it does in fact accrue, but the old cause of action, for the original claim, still continues unaffected, and the judgment is only the same cause of action in another form? No judgment for money ever has been or ever can be rendered of which it cannot be as truthfully said as of this judgment in the case at bar that it is only the original claim in another form. Is it a fact that lawyers, judges, and codifiers have so long been mistaken in supposing that a distinct cause of action upon a judgment accrues when the judgment is rendered. The fact that the same debt lies at the foundation of distinct causes of action does not render them identical. If one who has borrowed money fails to pay it, a cause of action against him for money loaned exists. If his creditor thereafter takes the debtor's note in full payment, the old cause of action is extinguished, and a new one is created. The fact that there was an original debt is important only for the purpose of showing a consideration for the note. But an action upon such a note, under such circumstances, cannot be regarded as an action for money loaned. The original cause of action in the case supposed has been wiped out. If, in turn, a bond should be executed in payment of the note, the cause of action on the note would, in turn, be destroyed. If judgment should finally be recovered upon such bond, the cause of action upon the bond would likewise be extinguished. In the case supposed, there would exist, in succession, four distinct causes of action, all founded upon the same debt, which had at no time been paid, despite all the various changes which had taken place in the form of the evidences of such indebtedness. Would counsel for plaintiff seriously contend that in such a case there existed at all times only one cause of action,—the original cause of action, for money

loaned ? Pushed to its logical consequences, the doctrine contended for would make it necessary for a court to apply to an action upon the judgment here involved the statute of limitations applicable to the original cause of action, the six years statute of limitation. All must agree that no action upon the notes can be maintained after judgment. This is conceded. All will assent to the proposition that the action must be maintained upon the judgment. And yet if it is the same cause of action as that upon the notes, or for the original debt, the six-years statute of limitation governs. This will be true in all cases. The consequence will be that in every instance the statute of limitations applicable to the cause of action upon which the judgment is founded will govern in actions upon such judgment. Would counsel for plaintiff concede that their cause of action upon this judgment would be barred in six years? Here is a decisive test.

It is urged that the facts set up in the supplemental complaint do not of themselves constitute a cause of action, independently the facts alleged in the original complaint; that the execution of the notes or the existence of the original debt is an essential element of the cause of action upon the judgment. We can see no force in this claim. The judgment is the cause of action, irrespective of the character of the claim on which it rests. No averment as to the nature of such anterior cause of action is necessary or even proper. Such an allegation would be stricken out as surplusage. In an action upon a judgment, the only inquiry which a court will make is whether there is a valid judgment, unsatisfied and unpaid. The test as to the necessity of an allegation in a complaint is whether that specific fact need be proved to make out a case. When a judgment is sued upon, it is a matter of no moment what lies behind the judgment, if it is valid; or, indeed, whether there was any claim behind it at all. That question is forever foreclosed by the judgment itself. If an allegation as to the existence of the notes set forth in the original complaint is vital to the cause of action upon the judgment, then issue upon that fact might be taken by the defendant. Will it be urged that

the defendant would be allowed to go into that question in a suit upon the judgment which had forever set that question at rest? Section 5291, Rev. Codes, provides that the plaintiff cannot unite in the same complaint a cause of action for slander and another cause of action based upon a contract. If the same defendant should thrice slander the same plaintiff, and judgment for one of such slanders should be recovered by the plaintiff, and the defendant should give him his note in settlement of the damages sustained by him by reason of another thereof, would it be contended that thereafter the plaintiff might, in the same complaint, join the cause of action upon the judgment and the cause of action upon the note with the cause of action for the third slander, on the ground that the note and the judgment had not changed the essential nature of the original causes of action for the two slanders, but had merely given the original obligations to pay damages for such slanders another form? In all causes of action there exist, as we have before observed, two fundamental elements. There are the facts which create the obligation. There is the other fact that that obligation has not been respected. In this action, as originally instituted, upon the notes, the fact which constituted the obligation was the execution and delivery of notes for a consideration. The default of the defendant was in failing to pay them when due. But neither of these particular elements enters into the cause of action upon the judgment. The obligation in the latter case is created by the judgment, and not by the notes. The default is the failure to pay such judgment, and not an omission to pay the notes, which can no longer be paid, because the judgment has as completely extinguished any cause of action upon them as payment would have done. How can a cause of action based upon one kind of obligation arising out of a certain fact, coupled with a failure to discharge that obligation, be the same cause of action as that which rests upon another and different obligation, springing out of a new fact, coupled with a a failure to comply with such new obligation. Every cause of action is the invasion of the plaintiff's rights by the defendant, or

the latter's failure to discharge some legal duty to the plaintiff. If a defendant assaults a plaintiff, he invades his rights. If he omits to pay when due his note held by the plaintiff, he fails to discharge a legal duty to the plaintiff. In each case, these respective elements constitute the plaintiff's cause of action. A court, in determining whether the defendant has invaded plaintiff's rights, or neglected to discharge a legal duty which he owes the plaintiff must make the preliminary inquiry as to the facts out of which plaintiff's alleged rights arises. If that right rests upon the defendant's obligation to pay a note, it is that particular right, in connection with defendant's failure to respect it, that constitutes the plaintiff's cause of action. If it rests upon the defendant's obligation to pay a judgment rendered against him upon such note, it is that particular right, in connection with the defendant's disregard of it, which constitutes that particular cause of action. This is the utmost scope of Prof. Pomeroy's language in his work on Remedies and Remedial Rights (§ 453). The primary right therein referred to is the plaintiff's right in the particular case. If it rests upon contract, it must stand upon the particular contract sued upon. A plaintiff's primary right in an action upon a note is the defendant's duty to him which the note creates. When a judgment is rendered upon such note, the primary right is the defendant's duty to the plaintiff created by such judgment, and not by the note, which has ceased to be the source of any duty of the defendant to the plaintiff.

Counsel essay to distinguish the case of *Wattson* v. *Thibou*, 17 Abb. Prac. 184, from the case at bar. We are unable so to distinguish it. It is true that the notes in that case were not extinguished by a judgment, but by bonds received in payment thereof. But wherein does this difference affect the principle? The original debt had not been paid by the bonds, any more than the original debt in this case has been paid by the judgment. Accepting such bonds in satisfaction of the notes is strictly analogous to recovering judgment upon notes in the case at bar, and thus extinguishing them as subsisting obligations. Each act

is the voluntary act of the creditor. Whether he, in terms, extinguishes the original cause of action, or invokes the powers of a court of justice to do that which has the same effect,—*i. e.* render a judgment upon such original cause of action,—is immaterial. Nor does it make any difference that the act of extinguishing the original cause of action by accepting a new obligation is called "novation," whereas the act of destroying such cause of action by the recovery of judgment is not called "novation," but "merger." The vital question is: Has the original cause of action been destroyed, and a new one substituted for it? The very argument made by counsel for plaintiff in this case could have been employed by the court in the Wattson case to justify the allowance of plaintiff's motion that he be permitted to file a supplemental complaint. The court could have said with as much truth as can be here asserted that the original debt had not been affected, but only a new evidence of indebtedness substituted for the old. But this was not regarded by the court in that case as at all important. The court saw and held that a cause of action upon bonds was not the same as a cause of action upon notes previously given, although the same debt furnished the consideration for each of these classes of obligations.

It is urged that we did not speak with precision when, in distinguishing the case of *Jenkins* v. *Bank,* 127 U. S. 484, 8 Sup. Ct. 1196, we asserted that the cause of action in that case was the lien sought to be foreclosed. We fail to discover our error in this respect except that we should have spoken of the lien as constituting the cause of action when coupled with defendant's failure to perform his legal duty to satisfy the lien. It is said that if the lien constituted one element of the cause of action in that case, in contradistinction from the debt, the indebtedness need not have been set up in the complaint therein; that it would have been necessary to refer to nothing but the lien in the bill. But a lien presupposes a debt. It cannot exist without one. A lien is the legal grip of a debt upon property. When it is said

that a lien constitutes an element in a cause of action in a parti-
cular case, the assertion is made that this grip of a debt upon
property is the cause of action which the plaintiff is seeking to
enforce by a foreclosure suit.  In an action to foreclose a lien,
the lien is the main thing.  It is illogical to speak of the lien
being a mere incident of the debt in such a case.  The debt is a
component part of the lien, and not something separate from it, of
which the lien is a mere incident.  One who has secured a lien
upon property is vested with an equitable cause of action,
distinct from his mere legal cause of action to recover a personal
judgment against the debtor.  It is the lien, and not the mere
debt, which gives him that equitable cause of action.  If the
indebtedness constitutes the cause of action in such a case, then
an action to foreclose a lien is an action at law, the same as an
action against the debtor to recover a mere money judgment, for
the cause of action in each case is the same,—i. e. the debt.  A
plaintiff brings an action on a note, and also an action to foreclose
a lien which secures such note.  Are the two actions the same?
All know that they are not.  What distinguishes them is the lien.
When the suit is to foreclose the lien, the cause of action is the
lien to be foreclosed, coupled with defendant's default.  When
the object of the action is to obtain a money judgment merely,
the note, coupled with defendant's default, constitutes the cause
of action.  If, in a foreclosure action, the lien is not one of the
elements in the cause of action, in contradistinction from the
debt, we are at a loss to know what, in such a case, does, in fact,
constitute one of the elements of the cause of action.  If a com-
plaint in a foreclosure action should fail to allege the existence of
the lien, it would be demurrable.  When it does properly set
forth the fact of a lien, it necessary contains an averment as to
the debt, for this is an essential ingredient in every lien.  A lien
is not alleged unless a debt of some character is set up.  But the
debt is not stated in the pleading, as the substantive cause of
action, but merely to make complete the allegations of the com-
plaint as to the existence of a lien, the lien being the real cause

of action sought to be enforced by the suit, when coupled with defendant's failure to satisfy it. A cause of action is that which enables the plaintiff to maintain the particular action he seeks to prosecute. What is it that gives the plaintiff a right to institute and carry on a suit to foreclose a lien if it is not the lien itself, in connection with the debtor's default?

It is insisted that the change proposed to be made by the supplemental complaint is one which relates to the form of the action only. We are unable to assent to this view. If the plaintiff had brought debt upon the judgment in question after the same had been rendered, and if forms of action had not been abolished by the code, and if it were the doctrine in this country, as in England, that a foreign judgment is not a record, and hence that an action of debt would not lie thereon, then in case the plaintiff should seek to change his action from debt to assumpsit, we would have the mere question of a change in the form of the action, the cause of action remaining the same. But it is not a change of this character which is attempted in this case. The plaintiff is not essaying to alter the mere form of his action (a thing never done by supplemental complaint,) but to bring into the case an entirely new cause of action. He seeks to eliminate from the complaint a cause of action which, since the commencement of this action, has been extinguished, and substitute in its place a new cause of action, which accrued after this action was instituted.

It is urged that the New Jersey case is not in point, for the reason that no radical changes had been made by statute in that state in the rules of procedure. But we have seen—and counsel for plaintiff assent to this conclusion—that the statute of this state regulating the filing of supplemental complaints has not altered the old rule that a new cause of action cannot by such means be substituted for the old. Nor is there anything in the language or spirit of our code which in any manner affects the significance of the phrase "cause of action." On the contrary, several provisions of the code to which we have referred

conclusively show that the old meaning of that phrase has not been disturbed. That which before the code system was adopted was not the cause of action, is not now the cause of action. It is therefore apparent that the statutory regulations of practice in this state have in no respect affected the two inquiries which lay at the foundation of the decision in the New Jersey case, and which also lie at the basis of our judgment in this cause,—*i. e.*: Can a new cause of action be substituted for the original by supplemental complaint? Does a new cause of action arise in this country when a judgment is recovered upon a claim in any of the courts thereof? The importance of this question to the profession is our apology for the length of this additional opinion.

The petition for a rehearing is denied.

WALLIN, C. J., concurs.